RAYTHEON COMPANY vs. DIRECTOR OF DIVISION OF
EMPLOYMENT SECURITY & another
(and two companion cases).

Middlesex. February 5, 1962. — May 11, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Employment Security,* Leaving work. *Words,* "Good cause."

G. L. c. 151A, § 25 (e) (1), as amended through St. 1958, c. 677, contemplates personal reasons of an employee as constituting "good cause" for a voluntary leaving of employment which will not disqualify him from receiving unemployment benefits under c. 151A. [370–372]

A wife's leaving her employment voluntarily to join her husband in a locality other than the locality in which she has been employed is not per se, but may be in all the circumstances, a leaving of employment with "good cause" which will not disqualify her under G. L. c. 151A, § 25 (e) (1), as amended through St. 1958, c. 677, from receiving unemployment benefits under c. 151A. [373–374]

The mere fact a wife voluntarily left her employment in Massachusetts "for the purpose of joining and living with" her husband, who was located outside Massachusetts, did not of itself show that she left her employment with "good cause" within G. L. c. 151A, § 25 (e) (1), as amended through St. 1958, c. 677, and a decision of a District Court affirming a decision of the board of review in the division of employment security that the wife was entitled to unemployment benefits under c. 151A was reversed by this court. [374–375]

THREE PETITIONS filed in the Second District Court of Eastern Middlesex on June 1, 1959, for review of decisions of the board of review in the division of employment security.

The cases were heard by *Parker, J.*

*Paul F. Hannah* (*Robert L. Molinar,* of New York, with him) for the petitioner.

*William C. Ellis,* Assistant Attorney General (*Israel L. Cohen* with him), for the director of the division of employment security.

SPALDING, J. The facts are not in dispute. The claimants for unemployment benefits under G. L. c. 151A, inserted by St. 1941, c. 685, § 1, as amended, are three mar-

ried women formerly employed by Raytheon Company (Raytheon) who left their employment "for the purpose of joining and living with [their] husband[s] located outside this Commonwealth."[1]  Employment continued to be available to them with Raytheon.  Each of the three claimants sought work in the State to which she had removed and, failing to find work, each has applied for unemployment benefits.

The director of the division of employment security, after a hearing, decided that the claimants were entitled to benefits.  § 39.  Raytheon requested a review by the board of review (§ 40), and a review examiner to whom the cases were referred affirmed the decisions of the director.  § 41.  Upon the denial of Raytheon's application to the board of review for rehearing, the review examiner's decisions became the decisions of the board of review.  § 41.  From these decisions Raytheon filed petitions (under § 42) for review in the District Court, alleging under G. L. c. 151A, § 25 (e) (1) (as amended through St. 1958, c. 677), error in the board's decisions that the claimants left their employment with "good cause."  The judge ruled that there was no error of law and affirmed the decisions.  Raytheon appealed.  § 42.

The issue presented on this appeal is whether leaving employment to join one's husband in another State constitutes leaving "voluntarily without good cause," within the meaning of G. L. c. 151A, § 25 (e) (1).[2]  If it does, then the claimants are barred from receiving unemployment benefits for a period of four to ten weeks after the effective date

---

[1] It appears that Mrs. Selders moved to Kansas City, Missouri, Mrs. Thrower to Rock Hill, South Carolina, and Mrs. Keeble to Williamsport, Pennsylvania.

[2] Statute 1958, c. 677, was entitled: "An Act liberalizing the eligibility provisions of the employment security law and providing that certain persons who leave their work shall not be disqualified from receiving benefits under said law."

Chapter 677 amended § 25 of G. L. c. 151A, so as to read in part as follows (new language is in italics; words eliminated are in brackets): "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for . . . (e) *A period of four to ten weeks, as the director shall determine, after the effective date of his claim if an individual has left his work* (1) *voluntarily* without good cause [attributable to the employing unit or its agent], (2) by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employ-

of the claim, "as the director shall determine." There is no question but that the leaving was voluntary. However, Raytheon contends that no voluntary unemployment can be with good cause unless the cause is connected with the employment relationship. The 1958 amendment (St. 1958, c. 677), which eliminated the phrase "attributable to the employing unit or its agent," points in the opposite direction in that it appears to evidence a legislative intent that personal reasons for withdrawal from employment can constitute "good cause."

Raytheon argues that the sole reason for changing the phrase "without good cause attributable to the employing unit or its agent" to "voluntarily without good cause" was to abrogate the effect of our decision in *Lamont* v. *Director of the Div. of Employment Security,* 337 Mass. 328, which held that pensioners who retired pursuant to a compulsory retirement provision in a pension plan were unemployed "without good cause attributable to the employing unit or its agent." The legislative history refutes this argument. Chapter 677 of St. 1958, which was first introduced as House Doc. No. 1331 (January, 1958), contained the amended language "voluntarily without good cause" without what is now the last sentence of § 25 (e). On October 6, 1958, the Senate recommended that House Doc. No. 1331 ought to pass, with an amendment substituting a new draft entitled "An Act providing that compulsory retirement under a pension program shall not disqualify an individual from receiving benefits under the employment security law." 1958 Senate Doc. No. 846. The Senate amendment was accepted (see 1958 Senate Doc. No. 858) and appeared in St. 1958,

ing unit's interest, or (3) because of conviction of a felony or misdemeanor; *provided, however, that if the individual had new work subsequent to such leaving, the number of weeks determined by the director as the period during which no waiting period shall be allowed and no benefits paid shall be reduced by the number of weeks of such new work. No disqualification shall be imposed, if such individual establishes to the satisfaction of the director* that he left his employment *in good faith* to accept new [bona fide] employment on a permanent full-time basis, and that he became separated from such new employment for good cause attributable to the new employing unit. *An individual shall not be disqualified under the provisions of this subsection from receiving benefits by reason of leaving his work under the terms of a pension program requiring retirement from employment, notwithstanding his prior assent, direct or indirect, to the establishment of such pension program."*

c. 677 as follows: "An individual shall not be disqualified under the provisions of this subsection from receiving benefits by reason of leaving his work under the terms of a pension program requiring retirement from employment, notwithstanding his prior assent, direct or indirect, to the establishment of such pension program." This legislative history, showing the independent appearance of the two amendments in question, demonstrates, we believe, that the Legislature, by the amended language "voluntarily without good cause," intended to liberalize the employment security law to a greater extent than merely to remove the disqualification on pensioners who retire pursuant to a compulsory retirement program. We are of opinion that the statute, as now worded, contemplates personal reasons for quitting work as constituting good cause. This construction is consonant with the command of § 74 to the effect that the act "shall be construed liberally in aid of its purpose, which purpose is to lighten the burden which now falls on the unemployed worker and his family." See Kempfer, Disqualifications for Voluntary Leaving and Misconduct, 55 Yale L. J. 147, 151.

Raytheon earnestly urges that had the Legislature intended by the 1958 amendment of § 25 (e) (1) to embrace personal reasons for quitting, it would at the same time have amended § 14, the merit rating system. The fact that § 14 was not amended is evidence, it is argued, that the Legislature did not intend the phrase "good cause" to include personal reasons. The argument proceeds as follows: the merit rating system rewards employers who have good employment records by requiring lesser contributions to the unemployment fund. If personal reasons for quitting, over which the employer obviously has no control, can constitute good cause, then the employer's merit rating is no longer within his own control and he is charged with unemployment which is not his fault. Raytheon, in its able brief, points out that in eight of the eleven States in which compensation is allowed when the unemployment results from a change of marital domicil the acts provide that the benefits

paid are to be charged to the solvency account, and not to the account of the former employer. That there is force in this argument cannot be denied. It would seem onerous to penalize an employer, who has work available, by increasing the charges that he must pay into the fund by reason of unemployment resulting from an act of his employee over which the employer has no control. But this argument, however appealing, cannot override what seems to us to be the clearly expressed legislative intent. If as a result of this construction the consequences to employers are unduly harsh, the remedy must come from the Legislature.

The case law is in conflict as to whether voluntarily leaving employment to join one's husband is good personal cause. It has been held to be such in *Matter of Shaw,* 6 App. Div. 2d (N. Y.) 354, affd. in 5 N. Y. 2d 1014 (without opinion), *Berry, Whitson & Berry* v. *Division of Employment Security,* 21 N. J. 73, *Teicher Unemployment Compensation Case,* 154 Pa. Super. Ct. 250, *Sturdevant Unemployment Compensation Case,* 158 Pa. Super. Ct. 548, and *Mills Unemployment Compensation Case,* 164 Pa. Super. Ct. 421 (revd. in 362 Pa. 342 on other grounds). Compare *Dawkins Unemployment Compensation Case,* 358 Pa. 224, 231–233.

It has been held not to be good cause in *Unemployment Ins. Commn.* v. *Cochran Foil Co.* 331 S. W. 2d 903, 906 (Ky.), *Woodmen of the World Life Ins. Soc.* v. *Olsen,* 141 Neb. 776, and *Stone Mfg. Co.* v. *South Carolina Employment Security Commn.* 219 S. C. 239. The *Woodmen* and *Stone* cases were decided on the ground that the statutes, as construed by the courts, required the cause for leaving to be connected with the claimant's employment, and hence are not authority for the issue now before us. We are of opinion that the better view is that leaving employment to join one's husband may be good cause, depending on all the circumstances of the case. The *Teicher, Sturdevant,* and *Berry* cases all involved wives leaving jobs to join husbands in the armed services during the war. The test is well stated in the *Sturdevant* case: "[I]f a worker leaves his employment when he is compelled to do so by necessitous

circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment. . . . [J]oining a husband at a distant point may not always constitute good cause for a wife's leaving her employment. Obviously, a wife joining her husband who is enjoying an extended vacation, would not be justified in leaving her employment, unless perchance a serious illness required her attendance upon him. A husband may take a temporary or transient job in another locality without changing the marital domicile; in that case, no other circumstances appearing, a wife would not be justified in leaving her employment. The nature of the circumstances in each individual case, the strength and the effect of the compulsive pressure of external and objective forces must be evaluated, and if they are sufficiently potent, they become relevant and controlling factors." 158 Pa. Super. Ct. 548, 557–558.

In short, the fact that a wife quits her job to join her husband in another State does not per se constitute "good cause" within the purview of the statute. "[A] laudable motive for leaving employment and a 'good cause' within the meaning of the Act are entirely different things." *Stone Mfg. Co.* v. *South Carolina Employment Security Commn.* 219 S. C. 239, 247.

The facts in the cases at bar tell us only that the three claimants left their employment for the purpose of joining their husbands who are outside of this Commonwealth. For aught that appears, these wives may have originally left their husbands to come to Massachusetts to earn higher wages for a period of time, and have now returned to their homes, as prearranged. Such a leaving would not be with "good cause." We are of opinion that the meager facts here, without more, do not justify the conclusion that the claimants left their employment with "good cause." "The

pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances'' (see *Sturdevant* case at page 557) has not been shown.

The decisions of the District Court affirming the decisions of the board of review are reversed.

*So ordered.*