RAYTHEON COMPANY *vs.* DIRECTOR OF DIVISION OF
EMPLOYMENT SECURITY & another
(and two companion cases).

Middlesex.   November 5, 1963. — January 31, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Employment Security,* Leaving work.   *Words,* "Good cause."

The facts respecting various circumstances in which married women voluntarily left their employment to follow their husbands to new localities justified conclusions that they had "good cause" for leaving within G. L. c. 151A, § 25 (e) (1), as amended through St. 1958, c. 677, and were not disqualified by so doing from receiving unemployment benefits under c. 151A.

THREE PETITIONS filed in the Second District Court of Eastern Middlesex on November 4, 1960, January 5, 1961, and January 25, 1961, respectively, for review of decisions of the board of review in the division of employment security.

The cases were heard by *Parker, J.*

*Joseph S. Ayoub,* Assistant Attorney General (*Israel L. Cohen* with him) for the director of division of employment security.

*Paul F. Hannah* (*Emile G. deCoen* with him) for the petitioner.

SPALDING, J.   These are three appeals involving claims under the employment security law (G. L. c. 151A) for unemployment benefits by three married women who had been employed by Raytheon Company (Raytheon).   The director of the division of employment security after a hearing decided in favor of each claimant.   § 39.   Raytheon requested a review by the board of review (§ 40), and a review examiner to whom the cases were referred affirmed the decisions of the director.   Upon the denial of Raytheon's application to the board of review for rehearing,

the review examiner's decisions became the decisions of the board of review. § 41. Thereafter Raytheon brought petitions in the District Court (under § 42) for review. The judge reversed the decisions of the board and the director appealed. § 42.

The claimant Lois E. Brown worked as an inspector for Raytheon from October, 1959, until March 18, 1960. At that time her husband, who was unemployed, secured reasonable assurance of work in Florida, and the claimant left her work with Raytheon to move to Florida with him. A secondary motive for the move was the fact that their youngest child suffered from bronchial asthma, and they had been advised by a doctor that the warmer climate would be beneficial. At the time of the move, the claimant and her husband intended to live in Florida permanently. The husband secured the promised job, but the claimant was unable to obtain employment despite reasonable efforts to do so. In June, 1960, the claimant's father-in-law suffered a heart attack, and she and her husband returned to Massachusetts so that her husband could operate his father's business. Shortly after their return the claimant reapplied to Raytheon for work, but none was available. She obtained work with Western Electric Company on August 4, 1960, and was employed at the time of the hearing.

The claimant Carol E. Murphy worked at Raytheon's Waltham plant from December, 1957, until February 1, 1960, when she was given a one year leave of absence because of pregnancy. The child was born in April, at which time the claimant lived in Chelmsford. In May, 1960, the claimant's husband obtained employment in Gloucester and established a home there. The claimant moved to Gloucester to live with her husband. Toward the end of July, 1960, the claimant notified Raytheon that she could not return to work because of difficulty in obtaining transportation. The claimant sought work in Gloucester without success.

The claimant Elizabeth Grabau worked for Raytheon as a secretary from October, 1959, until June 17, 1960. The claimant and her husband owned property in Cuba and,

although the situation there at the time was not good, they thought conditions might improve and that by living in Florida they would be in a better position to look after their property in Cuba. Consequently they decided to quit their jobs in Massachusetts and seek work in Florida. At that time they intended to reside permanently in Florida, but her husband was unable to secure work there and they returned to Massachusetts. At the time of the hearing the claimant was employed.

The relevant statutory provision is G. L. c. 151A, § 25 (e), which reads as follows: "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for . . . (e) A period of four to ten weeks, as the director shall determine, after the effective date of his claim if an individual has left his work (1) voluntarily without good cause . . . ." Until amended by St. 1958, c. 677, the statute required that the good cause be "attributable to the employing unit or its agent." As amended, the statute contemplates personal reasons for voluntarily leaving work as constituting "good cause." *Raytheon Co.* v. *Director of Div. of Employment Security,* 344 Mass. 369, 371–373. The statute, as amended, may have harsh consequences. As we said in the *Raytheon* case at page 373, "It would seem onerous to penalize an employer, who has work available, by increasing the charges that he must pay into the fund by reason of unemployment resulting from an act of his employee over which the employer has no control. . . . [But], [i]f as a result of this construction the consequences to employers are unduly harsh, the remedy must come from the Legislature."

The *Raytheon* case also involved wives who had voluntarily left their jobs to join their husbands in a new locality. But not enough appeared to show that these moves were intended to be permanent. In those circumstances, we held that such leaving was not per se for good cause, but that it might be for good cause in the light of all the circumstances in a particular case if the "pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances" were established.

Raytheon Co. *v.* Director of Division of Employment Security.

In each of the present cases there is substantial evidence that the moves in question were intended as permanent at the time. G. L. c. 151A, § 42. G. L. c. 30A, § 14 (8) (e). We hold that when a wife leaves her employment to follow her husband in these circumstances she has "good cause" for doing so within the meaning of the statute. It is desirable in a matter of this sort to have a rule that will be easy to apply. The rule just stated meets this test; it also recognizes the legal right of the husband to select the domicil and protects the wife from hardship when she discharges her legal duty in following him.[1]

It follows that the decisions of the board of review determining that the claimants left their employment for "good cause" were correct, and that the decisions of the District Court must be reversed. With respect to the Murphy and Grabau cases this is the opinion of a majority of the court.

*So ordered.*

---

[1] Little by way of guidance can be found in decisions elsewhere. As we observed in the earlier *Raytheon* case, where the authorities are collected, the case law is in conflict as to when the voluntary leaving of work because of family obligations is good personal cause. In several jurisdictions (New Jersey, New York, and Pennsylvania) where the courts have held that family obligations could justify leaving a job, the Legislature has nullified the effect of these holdings by amending the statute. (See N. J. Laws [1961] c. 43, p. 423; N. Y. Consol. Laws, Labor Law, § 593, cl. 1 (b) (2); Pa. Laws [1959] p. 1910.)