WORCESTER HOUSING AUTHORITY *vs.* MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION.[1]

Worcester. November 6, 1989. - December 12, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Housing. Anti-Discrimination Law,* Housing. *Statute,* Construction. *Words,* "Marital status."

A housing authority's policy of refusing housing or housing-related benefits to unmarried couples and their children violated G. L. c. 151B, § 4 (6) & (7), which prohibits discrimination in publicly assisted housing based on marital status. [246-247]

CIVIL ACTION commenced in the Superior Court Department on July 15, 1988.

The case was heard by *James P. Donohue,* J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Michael W. Clancy (William J. Ritter* with him) for the plaintiff.

*Sharyn E. Dreyer* for the defendant.

*James M. Shannon,* Attorney General, *Rosanna Cavallaro & Ruth A. Bourquin,* Assistant Attorneys General, for Secretary of the Executive Office of Communities and Development, amicus curiae, submitted a brief.

*Jeffrey W. Purcell, Steven A. Hitov & Richard M.W. Bauer,* for Massachusetts Union of Public Tenants & another, amici curiae, submitted a brief.

---

[1] We acknowledge the briefs filed as amici curiae by the Secretary of the Executive Office of Communities and Development and the Massachusetts Union of Public Tenants and Tenants United for Public Housing Progress.

GREANEY, J. This case raises the issue whether, in denying public housing benefits to three unmarried couples on the sole basis that they were not married, the Worcester Housing Authority (authority) violated subsections (6) and (7) of § 4 of G. L. c. 151B (1988 ed.), which make it unlawful for managing agents of publicly assisted housing accommodations "to refuse to rent or lease . . . or withhold from any person or group of persons [housing] accommodations because of the . . . marital status of such person or persons." The Massachusetts Commission Against Discrimination (commission) concluded that the authority's policy was unlawful. The commission directed the authority to cease following the policy, to furnish benefits to the complainants, and to pay them damages. The authority brought a petition in the Superior Court pursuant to G. L. c. 151B, § 6, to set aside the commission's decision. A judge in the Superior Court allowed the commission's motion for summary judgment, and judgment entered affirming the commission's decision. The authority appealed and we granted its application for direct appellate review. We agree with the commission that G. L. c. 151B, § 4 (6) and (7), are unambiguous and that the plain words of the provisions prohibit the authority from maintaining its policy.

The commission became involved in the controversy as the result of complaints brought by three couples who had been denied either access to public housing or rental assistance payments by the authority. Each of the couples had been living together. One couple were the parents of one child, another of four children, and a third of two children. The man and the woman comprising each couple were not married to each other. In each case, the authority denied the couple's application because the man and the woman were not married to each other, and, consequently, could not meet the authority's definition of a "family."[2] In keeping with that defi-

[2]The authority considers a family to be "two or more persons sharing a residence whose income and resources are available to meet the family needs and who [also] are related by blood, marriage or operation of law."

nition, the authority refuses to provide housing or housing-related benefits to unmarried couples and their children.

General Laws c. 151B, § 4 (6) and (7), were amended in 1973 (St. 1973, c. 187, §§ 1-3) to prohibit discrimination in housing based on marital status. As revised, the statute makes it unlawful

> "to refuse to rent or lease or sell or negotiate for sale or otherwise to deny to or withhold *from any person or group of persons* . . . accommodations [and assistance] *because of the* race, religious creed, color, national origin, sex, age, ancestry or *marital status of such person or persons*" (emphasis supplied).

The authority makes numerous arguments urging us to conclude that the language in the statute protects only divorced and single individuals and not the unmarried couples who filed the complaints in this case. These arguments include the authority's view of how the statutory language should be interpreted, reference to decisions from other jurisdictions and a discussion of what the authority perceives to be good public policy.

In our view the authority's contentions are eclipsed by the reasonably straightforward language of the statute itself. The term "marital status" is commonly used with reference to both individuals and couples in inquiring about their situation with respect to marriage, and the language in the statute italicized above twice describes the protected classes both in singular and plural terms. The use of the plural signifies a legislative determination that two persons cannot be denied housing accommodations or benefits solely because the owner or administering authority prefers not to deal with certain kinds of people based on, inter alia, their race, sex, age, or marital status. The statute thus reaches, and prevents, discrimination in housing against, among others, unmarried couples, interracial couples, younger couples, older couples, and couples who hold different religious beliefs. In so doing,

it permits access to scarce public housing units, rent subsidies, and other programs by ensuring equal consideration.

Acceptance of the authority's arguments to the contrary would have us ignore the statute's use of plural terms. Such an approach would contravene the principles that the words of a statute, as the principal source of insight into the legislative purpose, are to be given their ordinary meaning, that no word or words used in a statute should be considered superfluous, and that, when the words of the statute taken in their ordinary sense produce a workable result, there is no need to resort to extrinsic aids to interpret the legislation. See *International Org. of Masters* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984); *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). When the words in subsections (6) and (7) pertaining to "marital status" and "groups of persons" are taken together with the mandate stated in G. L. c. 151B, § 9, that "[t]he provisions of [the Commonwealth's antidiscrimination statute] shall be construed liberally for the accomplishment of the purposes thereof," the conclusion is evident.

The commission correctly decided that subsections (6) and (7) protect the complainants in these cases against the authority's denial of their applications on the basis that they were not married and therefore not a "family."

*Judgment affirmed.*