ATTORNEY GENERAL *vs.* PAUL DESILETS & another.[1]

Franklin. February 8, 1994. - July 14, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Housing. Anti-Discrimination Law*, Housing. *Statute*, Construction. *Religion. Constitutional Law*, Freedom of religion. *Practice, Civil*, Summary judgment. *Words*, "Marital status."

There was no merit to the argument of defendants in an action alleging violation of G. L. c. 151B, § 4 (6), that their refusal to rent an available apartment to an unmarried woman and an unmarried man as cotenants was not discrimination on the basis of marital status but rather on the basis of their objection to the prospective tenants' conduct, viz., cohabitation. [320] O'CONNOR, J., dissenting, with whom NOLAN and LYNCH, JJ., joined.

This court stated that in interpreting the free exercise of religion clause found in art. 46, § 1, of the Amendments to the State Constitution it will continue to apply the balancing test established by the United States Supreme Court in *Wisconsin* v. *Yoder*, 406 U.S. 205, 215-229 (1972), *Sherbert* v. *Verner*, 374 U.S. 388, 406-409 (1963), and subsequent opinions, and standards such as this court applied in *Alberts* v. *Devine*, 395 Mass. 59, 74-75, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985), and *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 375, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982). [320-322] LIACOS, C.J., concurring.

This court recognized that, in the circumstances of the unchallenged record on cross motions for summary judgment in an action alleging a violation of G. L. c. 151B, § 4 (6), the operation of rental housing by persons who sincerely believe their behavior must conform in all respects to their religious beliefs, and to whom operation of rental housing is not independent of those beliefs, is for those persons the exercise of religion, protected by art. 46, § 1, of the Amendments to the State Constitution. [322-323]

Defendants in a civil action, on the basis of the record on cross-motions for summary judgment, demonstrated that the prohibition against housing discrimination based on marital status found in G. L. c. 151B, § 4 (6), substantially burdens their free exercise of religion guaranteed by art.

[1]Ronald Desilets.

46, § 1, of the Amendments to the Massachusetts Constitution, where the operation of the statute affirmatively obliges them to enter into contracts for the rental of property with cohabiting unmarried couples contrary to their sincerely held religious beliefs, and where both their nonconformity to the law and any related publicity might stigmatize the defendants in the eyes of others. [324-325]

In an action brought pursuant to G. L. c. 151B, § 5, in which the Attorney General, on the record of cross motions for summary judgment, established that the defendant owners of residential rental property violated G. L. c. 151B, § 4 (6), by refusing to rent an available apartment to certain prospective cotenants (an unmarried man and an unmarried woman) because of their marital status, and in which the defendants established that enforcement of that statute burdened their free exercise of religion protected by art. 46, § 1, of the Amendments to the Massachusetts Constitution, summary judgment was inappropriately entered for the defendants, where the record did not demonstrate there was no disputed material fact bearing on whether or not the Commonwealth has a compelling interest in eliminating housing discrimination to justify the burden placed on the defendants' free exercise of religion; the matter was remanded for further consideration under the balancing of competing interests standard required under art 46, § 1. [325-332] LIACOS, C.J., concurring. O'CONNOR, J., dissenting, with whom NOLAN and LYNCH, JJ., joined.

This court declined to consider the application of art. 2 of the Massachusetts Declaration of Rights to an action in which the defendants' asserted right to the free exercise of religion, in response to a claim that the defendants had violated an antidiscrimination statute, was absolutely protected under art. 46, § 1, of the Amendments to the Massachusetts Constitution, and where the balancing of competing interests standard under art. 2 is no more favorable to the defendants than the similar balancing test required under art. 46, § 1. [332-334] LIACOS, C.J., wrote separately to express his view on the scope of protection afforded by art. 2.


CIVIL ACTION commenced in the Superior Court Department on October 4, 1990.

The case was heard by *George C. Keady, Jr.*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Judith E. Beals*, Assistant Attorney General (*Freda Fishman*, Assistant Attorney General, with her) for the plaintiff.

*Nikolas T. Nikas,* of Arizona (*Jay Alan Sekulow,* of the District of Columbia, & *David L. Taylor* with him) for the defendants.

The following submitted briefs for amici curiae:

*Mark A. Michelson & Cynthia T. MacLean* for American Jewish Congress & others.

*Nadine M. Cohen, John F. Adkins, Debra K. Mayfield, Stephanie A. Levin, Elaine M. Epstein & Robert L. Quinan, Jr.,* for Housing Discrimination Project, Inc., & others.

*Scott Harshbarger,* Attorney General, *George P. Napolitano,* Special Assistant Attorney General, & *Elizabeth S. Hendler* for Massachusetts Commission Against Discrimination.

*Matthew J. Chachère, Joan P. Gibbs & Suzanne L. Shende,* of New York, for Center for Constitutional Rights.

*Ruth A. Bourquin, Mary L. Bonauto & Sally J. Greenberg* for Gay & Lesbian Advocates & Defenders & another.

*Robert Caprera* for Institute in Basic Life Principles & others.

*Steven T. McFarland, J. Thomas Witek, & Bradley P. Jacob,* of Virginia, & *Richard F. Duncan,* of Nebraska, for Christian Legal Society & others.

*John H. Henn, Michael A. Albert & Sarah R. Wunsch* for Civil Liberties Union of Massachusetts.

WILKINS, J. This case involves the tension between a statutory mandate that a landlord not discriminate against unmarried couples in renting accommodations and a landlord's sincerely held religious belief that he should not facilitate what he regards as sinful cohabitation.

The defendants, who are brothers, own a four-unit apartment house in the Turners Falls section of the town of Montague. Paul and his wife jointly own two other apartment buildings in Turners Falls which have a total of twenty-one residential units. In August, 1989, Paul, acting for himself and his brother, declined to consider leasing an apartment in the four-unit building to Mark Lattanzi and Cynthia Tarail,

an unmarried couple, because they would be cohabiting there.[2]

The defendants have a policy of not leasing an apartment to any person who intends to engage in conduct that violates their religious principles. The defendants' sole reason for declining even to consider Lattanzi and Tarail as tenants was that religion-based policy. The defendants, who are Roman Catholics, believe that they should not facilitate sinful conduct, including fornication. Since developing the policy at least a decade earlier, the defendants have applied it ten or more times to deny tenancies to unmarried couples.

General Laws c. 151B, § 4 (6), as in effect in August, 1989, provided, in part, that it shall be an unlawful practice for the owner of a multiple dwelling "to refuse to rent or lease . . . or otherwise to deny to or withhold from any person or group of persons such accommodations because of the race, religious creed, color, national origin, sex, age, ancestry or *marital status* of such person or persons" (emphasis supplied). G. L. c. 151B, § 4 (6) (1988 ed.).[3] We shall conclude that the defendants violated the provisions of this statute and that, therefore, we must consider the defendants' argument that enforcement of the statute against them violates their rights under the State and Federal Constitutions.

In September, 1989, Lattanzi and Tarail filed a housing discrimination complaint with the Massachusetts Commission Against Discrimination (MCAD), claiming that because of their marital status they were denied available housing in violation of G. L. c. 151B, § 4 (6). After the MCAD had found probable cause, Lattanzi and Tarail filed a notice seeking a judicial determination of the matter in the Superior

---

[2]We shall refer to cohabitation and cohabiting as the act of a man and a woman, not married to one another, living together as husband and wife in a sexual relationship. We recognize that a married couple also cohabits. See Webster's Third New Int'l Dictionary 440 (1993); Black's Law Dictionary 260 (6th ed. 1990).

[3]Statute 1989, c. 516, § 9, approved on November 15, 1989, inserted the category "sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object" after the category "sex" in the quoted language.

Court, pursuant to G. L. c. 151B, § 5 (1992 ed.). On October 4, 1990, the Attorney General, as was his obligation under G. L. c. 151B, § 5, commenced this action on behalf of the complainants in Superior Court in Franklin County.

A judge of the Superior Court decided the case on cross motions for summary judgment. He allowed the defendants' motion for summary judgment and denied the Attorney General's. The motion judge correctly ruled that the defendants had violated G. L. c. 151B. He then ruled that, on the summary judgment record, application of the statute to the defendants in this case would be unconstitutional. We granted the Attorney General's application for direct appellate review. We conclude that, on the record before us, neither party was entitled to summary judgment and that the summary judgment for the defendants should be vacated.

1. The defendants argue that they are not discriminating on the basis of marital status but rather on the basis of conduct and that consequently they are not discriminating in a way forbidden by G. L. c. 151B, § 4 (6). There is no merit to this argument. This court's opinion in *Worcester Hous. Auth.* v. *Massachusetts Comm'n Against Discrimination*, 406 Mass. 244 (1989), makes clear that the prohibition in G. L. c. 151B, § 4 (6), against discrimination in leasing because of marital status applies to discrimination against an unmarried woman and an unmarried man seeking to rent an apartment for their joint occupancy. Moreover, analysis of the defendants' concerns shows that it is marital status and not sexual intercourse that lies at the heart of the defendants' objection. If married couple A wanted to cohabit in an apartment owned by the defendants, they would have no objection. If unmarried couple B wanted to cohabit in an apartment owned by the defendants, they would have great objection. The controlling and discriminating difference between the two situations is the difference in the marital status of the two couples.

2. We consider first the protections provided by art. 46, § 1, of the Amendments to the State Constitution. Article 46, § 1 ("No law shall be passed prohibiting the free exer-

cise of religion") parallels the First Amendment to the Constitution of the United States ("Congress shall make no law . . . prohibiting the free exercise of religion"). See *Commonwealth* v. *Nissenbaum*, 404 Mass. 575, 578 (1989).

Despite the similarity of the two constitutional provisions, this court should reach its own conclusions on the scope of the protections of art. 46, § 1, and should not necessarily follow the reasoning adopted by the Supreme Court of the United States under the First Amendment. Indeed, after the release of our *Nissenbaum* opinion, the Supreme Court substantially altered its standard for determining whether conduct was protected under the free exercise of religion clause by its decision in *Employment Div., Dep't of Human Resources of Or.* v. *Smith*, 494 U.S. 872 (1990), a much criticized opinion that weakened First Amendment protections for religious conduct. See The Supreme Court, 1992 Term — Comment, The Resurrection of Religious Freedom?, 107 Harv. L. Rev. 118 & 118 n.3 (1993).[4]

In interpreting art. 46, § 1, we prefer to adhere to the standards of earlier First Amendment jurisprudence, such as we applied in *Alberts* v. *Devine*, 395 Mass. 59, 74-75, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985), and *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 375, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982). In each opinion, we used the balancing test that the Supreme Court had established under the free exercise of religion clause in *Wisconsin* v. *Yoder*, 406 U.S. 205, 215-229 (1972),

---

[4]The Supreme Court has continued to adhere to the principle of the *Smith* case that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc.* v. *Hialeah*, 113 S. Ct. 2217, 2226 (1993). Where, however, a law burdening religious practice is not neutral or is not of general application, that law must advance compelling interests and must be tailored narrowly in pursuit of those interests. *Id.* at 2233. Because this latter test states the standard that we apply under the State Constitution in all circumstances where a law burdens religion, we need not decide whether the law challenged in this case is neutral and of general applicability.

*Sherbert* v. *Verner,* 374 U.S. 388, 406-409 (1963), and subsequent opinions. See *Alberts* v. *Devine, supra* at 73-74; *Attorney Gen.* v. *Bailey, supra* at 375. See also *Employment Div., Dep't of Human Resources of Or.* v. *Smith, supra* at 894-895 (O'Connor, J., concurring in the judgment). By applying the balancing test as we do, we extend protections to the defendants that are at least as great as those of the First Amendment. No further discussion of rights under the First Amendment is, therefore, necessary.[5]

Our tasks are to determine whether the defendants have shown that the prohibition against housing discrimination based on marital status substantially burdens their free exercise of religion, and, if it does, whether the Commonwealth has shown that it has an interest sufficiently compelling to justify that ·burden. See *Alberts* v. *Devine, supra* at 73-74, citing *Wisconsin* v. *Yoder, supra* at 215-229, and *Sherbert* v. *Verner, supra* at 403-409. See also L.H. Tribe, American Constitutional Law § 14-12, at 1242 (2d ed. 1988) ("In order to gain the exemption, the claimant must show (1) a sincerely held religious belief, which (2) conflicts with, and thus

---

[5]The standard that we apply appears to be the same as that prescribed by the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb et seq.), signed into law on November 16, 1993, after the decision of the lower court in this case. The intent of the new law was to counteract the standard set in *Employment Div., Dep't of Human Resources of Or.* v. *Smith,* 494 U.S. 872 (1990). See § 2000bb (b) ("[t]he purposes of this Act are [1] to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 [1963] and Wisconsin v. Yoder, 406 U.S. 205 [1972] and to guarantee its application in all cases where free exercise of religion is substantially burdened; and [2] to provide a claim or defense to persons whose religious exercise is substantially burdened by government)."

Under § 2000bb-1 (b) of the Act, "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person — (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." The Act applies to States and political subdivisions (§ 2000bb 2-[1]), and all State law "whether adopted before or after the enactment of this Act" (§ 2000bb-3 [a]). ·

The defendants have referred to the Act in their supplemental brief here, and, in pleadings filed after remand from this court, they could assert rights under the Act.

is burdened by, the state requirement. Once the claimant has made that showing, the burden shifts to the state. The state can prevail only by demonstrating both that (3) the requirement pursues an unusually important governmental goal, and that (4) an exemption would substantially hinder the fulfillment of the goal" [footnotes omitted]).

Because it is unchallenged on the summary judgment record, we must accept that the defendants sincerely believe that their behavior must in all respects conform to their religious beliefs and that, in their view, the operation of rental housing is not independent of those beliefs. Conduct motivated by sincerely held religious convictions will be recognized as the exercise of religion. Supreme Court free exercise of religion cases have accepted, either implicitly or without searching inquiry, claimants' assertions regarding what they sincerely believe to be the exercise of their religion, even when the conduct in dispute is not commonly viewed as a religious ritual. See, e.g., *Hobbie* v. *Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 137 (1987) (refusal to work Sabbath hours); *United States* v. *Lee*, 455 U.S. 252, 257 (1982) (abstention from participating in government social security program); *Thomas* v. *Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 715 (1981) (refusal to work in weapons production). See also Tribe, *supra* at § 14-12, at 1243-1244. Our opinions concerning the free exercise of religion have also recognized action based on religious beliefs as the exercise of religion. See, e.g., *Fedele* v. *School Comm. of Westwood*, 412 Mass. 110, 116 (1992) (right to maintain religion includes "freedom to believe" and "freedom to act on that belief"); *Murphy* v. *I.S.K.Con. of New England, Inc.*, 409 Mass. 842, 851, cert. denied, 502 U.S. 865 (1991) ("Both this court and the United States Supreme Court have recognized that the concept of free exercise of religion involves both belief and activity"; teaching of religious beliefs is protected activity); *Attorney Gen.* v. *Bailey*, *supra* at 375-376 (threshold question satisfied because operation of school was activity "motivated by a sincerely held religious belief").

The next question is whether the prohibition against discrimination based on marital status substantially burdens the defendants' exercise of their religion. The extent of any burden will become important if and when it comes time to balance any such burden against the interests of the Commonwealth in eliminating marital status discrimination in housing. We first consider whether there is any burden at all on the defendants' free exercise of religion. We have said that the government's failure to provide a child with subsidized transportation to a private sectarian school does not burden the child's free exercise of religion. *Fedele* v. *School Comm. of Westwood, supra* at 116.[6] Here, the situation differs because the government has placed a burden on the defendants that makes their exercise of religion more difficult and more costly. The statute affirmatively obliges the defendants to enter into a contract contrary to their religious beliefs and provides significant sanctions for its violation.[7] Moreover, both their nonconformity to the law and any related publicity may stigmatize the defendants in the eyes of many and thus burden the exercise of the defendants' religion. Four State appellate courts, on similar but not identical facts, have dealt recently with the question of a substantial burden on the free exercise of religion under their respective State Constitutions, and all four concluded that a marital status antidis-

---

[6]See *Tony & Susan Alamo Found.* v. *Secretary of Labor*, 471 U.S. 290, 304 (1985) (no burden where no financial disadvantage need result to religious employer from operation of law). See also *Jimmy Swaggart Ministries* v. *Board of Equalization of Cal.*, 493 U.S. 378, 391-392 (1990) (taxation on sales and use of religious media reduced claimant organization's income but did not violate religious beliefs or otherwise burden exercise of religion); *Hernandez* v. *Commissioner of Internal Revenue*, 490 U.S. 680, 694-700 (1989) (disallowance of tax exemption for cost of religious "auditing" sessions reduced claimants' disposable income, but did not burden religious activity itself).

[7]The MCAD may award damages and attorney's fees and costs to a prevailing complainant. G. L. c. 151B, § 5 (1992 ed.). The MCAD may also assess a civil penalty against one who has engaged in § 5 unlawful housing practices. *Id.* If a civil action is brought under G. L. c. 151B, § 9 (1992 ed.), the court may award actual and punitive damages, as well as attorney's fees and costs, and may grant injunctive relief.

crimination law imposed such a burden. See *Swanner* v. *Anchorage Equal Rights Comm'n*, 868 P.2d 301, 308, reh'g granted, withdrawn from bound volume, modified, and reissued per curiam, 874 P.2d 274 (Alaska 1994); *Smith* v. *Commission of Fair Employment & Hous.*, 25 Cal. App. 4th 251, modified, 39 Cal. App. 4th 877 (1994); *Donahue* v. *Fair Employment & Hous. Comm'n*, 2 Cal. Rptr. 2d 32, 42 (Ct. App. 1991), review granted, 5 Cal. Rptr. 2d 781 (1992), review dismissed granted, 23 Cal. Rptr. 2d 591 (1993); *State by Cooper* v. *French*, 460 N.W.2d 2, 10 (Minn. 1990); *id.* at 15 (Popovich, C.J., dissenting).

The fact that the defendants' free exercise of religion claim arises in a commercial context, although relevant when engaging in a balancing of interests, does not mean that their constitutional rights are not substantially burdened. This is not a case in which a claimant is seeking a financial advantage by asserting religious beliefs. See cases cited in note 6 above. The defendants' right to free exercise of religion is substantially burdened by the operation of G. L. c. 151B, § 4 (6).

We must, therefore, consider whether the record establishes that the Commonwealth has or does not have an important governmental interest that is sufficiently compelling that the granting of an exemption to people in the position of the defendants would unduly hinder that goal. The general objective of eliminating discrimination of all kinds referred to in the relevant version of § 4 (6) ("race, religious creed, color, national origin, sex, age, ancestry or marital status") cannot alone provide a compelling State interest that justifies the application of that section in disregard of the defendants' right to free exercise of their religion. The analysis must be more focused. At the least, the Commonwealth must demonstrate that it has a compelling interest in the elimination of discrimination in housing against an unmarried man and an

unmarried woman who have a sexual relationship and wish
to rent accommodations to which § 4 (6) applies.[8]

Earlier in this opinion we pointed out that four other ap-
pellate State courts had recognized, as we do in this opinion,
that a marital status antidiscrimination law such as ours sub-
stantially burdens the free exercise of religion by a landlord
who does not believe in leasing premises to unmarried cohab-
itants. Judicial unanimity disappeared, however, when the
role of a compelling State interest in the balancing of inter-
ests was considered. None of these opinions, majority or dis-
senting, provides reasoning that is particularly instructive in
deciding the issue that we are now discussing.[9]

---

[8]The Commonwealth concedes, and we therefore assume for the pur-
poses of this case, that G. L. c. 151B, § 4, provides an exception from all
its coverage for a religious institution and for an organization operated for
charitable or educational purposes which is in turn operated by a religious
organization. The relevant provision in 1989 read as follows:

> "Nothing herein contained shall be construed to bar any religious
> or denominational institution or organization, or any organization
> operated for charitable or educational purposes, which is operated,
> supervised or controlled by or in connection with a religious organi-
> zation, from limiting admission to or giving preference to persons of
> the same religion or denomination or from making such selection as
> is calculated by such organization to promote the religious principles
> for which it is established or maintained."

General Laws c. 151B, § 1 (11) (1992 ed.), defines multiple dwellings,
to which § 4 (6) applies, as dwellings that are rented to three or more
families living independently of each other.

The Commonwealth states the issue in this case as whether the exemp-
tions and limitations of G. L. c. 151B are constitutionally inadequate.

[9]The Minnesota court held that the Legislature obviously did not intend
the Minnesota Human Rights Act's ban against marital status discrimina-
tion "to include unmarried, cohabiting couples in housing cases." State by
Cooper v. French, 460 N.W.2d 2, 7 (Minn. 1990) (four-to-three decision).
The six Justices of the Minnesota court who discussed the compelling
State interest question split evenly on the issue under their State Constitu-
tion. See id. at 11 (Simonett, J., concurring as to Part I); id. at 11, 21
(Popovich, C.J., dissenting).

In the earlier California case, a California Court of Appeals divided
(two to one) on the question of the State's compelling interest, holding that
the burden of the statute on the prospective landlords' sincere and legiti-
mate free exercise of religion was substantial and that "the state's statu-
tory interest in protecting unmarried cohabiting couples from discrimina-
tion ranks relatively low in the hierarchy of the state's governmental

As the motion judge correctly ascertained, marital status discrimination is not as intense a State concern as is discrimination based on certain other classifications. Article 1 of the Massachusetts Declaration of Rights, as amended by art. 106, of the Amendments to the Massachusetts Constitution, states that "[e]quality under the law shall not be denied or abridged because of sex, race, color, creed or national origin." Because there is no constitutionally based prohibition against discriminating on the basis of marital status, marital status discrimination is of a lower order than those discriminations to which art. 1 refers. Moreover, in various ways, by

---

interests." *Donahue* v. *Fair Employment & Hous. Comm'n*, 2 Cal. Rptr. 2d 32, 46 (Ct. App. 1991). The California Supreme Court then granted a petition for review (5 Cal. Rptr. 2d 781 [1992]), but later dismissed the review as improvidently granted (20 Cal. Rptr. 2d 591 [1993]), and rejected a request for an order directing publication of the opinion of the Court of Appeals. That opinion consequently does not and will not appear in the official California Reports. Under Cal. R. Ct. 977 (a) (1994), unpublished opinions may not be cited or relied on by any court or party within the State of California. Of course, the final judgment is still binding on the parties, but it has been observed that rule 977 effectively prevents an unpublished decision from having any precedential value. See 9 B.E. Witkin, California Procedure § 583, at 574-575 (3d ed. 1985).

In the more recent California intermediate appellate court opinion, the court stated, applying the Federal constitutional principles: "Given our conclusion the policy of protecting unmarried couples against housing discrimination does not rise to the level of a compelling state interest, the application of the statute implementing that policy to plaintiff must give way to plaintiff's exercise of her fundamental rights." *Smith* v. *Commission of Fair Employment & Hous.*, 25 Cal. App. 4th 251, modified, 39 Cal. App. 4th 877 (1994). On the State constitutional question, the court reached the same conclusion, stating that "California has no compelling interest in prohibiting housing discrimination against unmarried couples such as would outweigh plaintiff's state constitutional free exercise claim." *Id.* at 901.

The Alaska Supreme Court also divided on the proper conclusion to reach on the balancing test, holding that the free exercise clauses of the United States and Alaska Constitutions did not entitle the landlord to an exemption from State and local marital status antidiscrimination laws. *Swanner* v. *Anchorage Equal Rights Comm'n*, 868 P.2d 301, 312 (four-to-one decision), reh'g granted, withdrawn from bound volume, modified, and reissued per curiam, 874 P.2d 274 (Alaska May 13, 1994).

statute[10] and judicial decision,[11] the law has not promoted cohabitation and has granted a married spouse rights not granted to a man or woman cohabiting with a member of the opposite sex.

The defendants argue further that G. L. c. 272, § 18 (1992 ed.), presents a public policy consideration that weighs against the interest stated in G. L. c. 151B against discrimination based on marital status. Section 18 makes fornication

---

[10]There are numerous statutes granting husbands and wives rights which do not extend to unmarried partners. See, e.g., G. L. c. 152, §§ 31-32 (1992 ed.) (workers' compensation law protecting interests of spouse of worker killed in industrial accident); G. L. c. 175, § 110I (1992 ed.) (providing for continued health insurance coverage for divorced or separated spouses); G. L. c. 175, § 111G (1992 ed.) (extent of family coverage under motor vehicle insurance policy limited to insured, insured's spouse, and unmarried dependent children under twenty-three years of age); G. L. c. 175, § 123 (1992 ed.) (for purposes of section dealing with restrictions on issuance of life insurance policies, "members of a family shall mean husband, wife, children, adopted children, or step-children"); G. L. c. 190, § 1 (1992 ed.) (spouse's right to share of property not disposed of by will); G. L. c. 191, §§ 15, 16 (1992 ed.) (spouse's right to waiver of will and election of statutory share); G. L. c. 193, § 1 (1992 ed.) (surviving spouse listed first in schedule of persons entitled to appointment to administer intestate's estate); G. L. c. 229, § 1 (1992 ed.) (right of surviving spouse to bring wrongful death action); G. L. c. 233, § 20 (1992 ed.) (spouse's testimony ordinarily inadmissible as to contents of private husband-wife conversation; no marital communication privilege for conversations before marriage or between unmarried partners [see *Reep* v. *Commissioner of the Dep't of Employment & Training,* 412 Mass. 845, 854 (1992) (Nolan, J., dissenting)]); G. L. c. 274, § 4 (1992 ed.) (spouse has defense against charge of being an accessory after the fact for harboring, concealing, or assisting spouse before or after spouse perpetrated a felony).

[11]Our cases have made clear distinctions between the legal rights of marital and nonmarital partners. See, e.g., *Collins* v. *Guggenheim,* 417 Mass. 615, 617-618 (1994) (long-term cohabitants not entitled to equitable distribution of property); *Reep* v. *Commissioner of the Dep't of Employment & Training, supra* at 851 (married person who leaves work to join spouse is presumed to have satisfied statutory requirement for unemployment compensation eligibility; long-term nonmarital partner could offer proof toward meeting standard, but without benefit of same presumption); *Feliciano* v. *Rosemar Silver Co.,* 401 Mass. 141 (1987) (nonmarital partners have no right to sue for loss of consortium); *Heistand* v. *Heistand,* 384 Mass. 20, 24 (1981) ("Massachusetts does not recognize common-law marriage"); *Davis* v. *Misiano,* 373 Mass. 261, 263 (1977) (nonmarital partners have no right to separate support and alimony).

a crime. This statute is of doubtful constitutionality, at least as applied to the private, consensual conduct of persons over the age of consent. See *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974). It remains, however, as a criminal statute of the Commonwealth, which suggests some diminution in the strength of the Commonwealth's interest in the elimination of housing discrimination based on marital status.

Without supporting facts in the record or in legislative findings, we are unwilling to conclude that simple enactment of the prohibition against discrimination based on marital status establishes that the State has such a substantial interest in eliminating that form of housing discrimination that, on a balancing test, the substantial burden on the defendants' free exercise of religion must be disregarded. It is no doubt true that many men and women are cohabiting in the Commonwealth and that numbers have increased in the last twenty years. We have no sense, however, of the numbers of rental units that might be withheld from such people because of the religious beliefs of the owners of rental housing. Although the prohibition against discrimination based on marital status was enacted over twenty years ago (St. 1973, c. 187), this is the first case of this character that has come to our attention.

We have no indication, beyond the facts of this case, whether the rental housing policies of people such as the defendants can be accommodated, at least in the Turners Falls (Montague) area, without significantly impeding the availability of rental housing for people who are cohabiting or wish to cohabit. Market forces often tend to discourage owners from restricting the class of people to whom they would rent. On the other hand, discrimination of the sort challenged here may present a significant housing problem if a large percentage of units are unavailable to cohabitants.

We reject any argument that a general rule must be applied because of problems in determining whether religious beliefs sincerely underlie a landlord's refusal to lease. The sincerity of such action assertedly founded on religious be-

liefs is open to challenge in a free exercise of religion case. See *United States* v. *Ballard*, 322 U.S. 78 (1944). We would, moreover, not readily subscribe to a rule that justified the denial of constitutional rights simply because the protection of those rights required special effort. For similar reasons, in the absence of proof, we would not find a compelling State interest in this case simply because other individuals might assert the right to be exempt from this or some other law on religious grounds and in doing so would make enforcement of that law difficult. Yet the practical problems of administering a law with the exemption that the defendants seek may be shown to be such as to make the operation of such an exemption impractical. Finally, the compulsion of the State's interest appears somewhat weakened because the statute permits discrimination by a religious organization in certain respects (see note 8 above) if to do so promotes the principles for which the organization was established.

We are not persuaded on the record that the Commonwealth's interests in the availability of rental housing for cohabiting couples must always prevail over the religion-based practices that people such as the defendants wish to pursue. On the other hand, we cannot say that it is certain that the Commonwealth could not prove in this case that it has some specific compelling interest that justifies overriding the defendants' interests.

The Commonwealth has the task of establishing that it has a compelling interest in eliminating housing discrimination against cohabiting couples that is strong enough to justify the burden placed on the defendants' exercise of their religion. A task of this sort has been carried out successfully in some cases and not in others. Compare *Bob Jones Univ.* v. *United States*, 461 U.S. 574, 592-593, 604 (1983) (eradication of racial discrimination in education is compelling State interest, superseding any free exercise rights of petitioners); *United States* v. *Lee*, 455 U.S. 252, 258-259 & nn.7-9 (1982) (overriding interest in operation of national social security system is compelling) with *Thomas* v. *Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 719 (1981)

(no compelling State interest established); *Wisconsin* v. *Yoder*, 406 U.S. 205, 224-229 (1972) (same); and *Sherbert* v. *Verner*, 374 U.S. 398, 407 (1963) (same). Cf. *Guiney* v. *Police Comm'r of Boston*, 411 Mass. 328, 332-334 (1991) (generalized sense that there is a drug problem does not alone justify random drug testing of police officers).

The summary judgment record does not establish that there is no disputed material fact bearing on the compelling State interest question. In that circumstance summary judgment is inappropriate. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). *Doe* v. *New Bedford Hous. Auth.*, 417 Mass. 273, 279 (1994). *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 808-809 (1991). *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107, 115-116 (1985). There are factual circumstances that bear on the question, both as to the existence of a general State interest in the elimination of discrimination in housing based on marital status and as to the existence of a particularized State interest in the Turners Falls area. Uniformity of enforcement of the statute may be shown to be the least restrictive means for the practical and efficient operation of the antidiscrimination law. It should be remembered that the task is to balance the State's interests against the nature of the burden on the defendants and that we are concerned here with the business of leasing apartments, not with participation in a formal religious activity.

Now that we have defined the nature of the relevant State constitutional rights and the applicable standards, we should not announce that the Commonwealth cannot possibly make its case, but rather we should give it a chance to demonstrate its compelling interest in the application of the statute. In short, on the summary judgment record, we conclude that the uncontested material facts disclose no basis for ruling that the Commonwealth can or cannot meet its burden of establishing that it has a compelling interest that can be fulfilled only by denying the defendants an exemption from G. L. c. 151B, § 4 (6). Therefore, summary judgment

should not have been granted to the defendants, and neither side is entitled to summary judgment.

3. We now turn to art. 2 of the Massachusetts Declaration of Rights.[12] That article, unaltered since the people adopted it in 1780, has no precise parallel in the Constitution of the United States, although certain of art. 2's principles are reflected in the First Amendment to the United States Constitution. Article 2 is important to this case only if it grants greater protection to the defendants than do either the First Amendment or the cognate free exercise of religion provision appearing in art. 46, § 1, of the Amendments to the Constitution of the Commonwealth.

"The Constitution of the Commonwealth . . . guarantees to all our people absolute freedom as to religious belief and liberty unrestrained as to religious practices," provided that the public peace is not disturbed and others are not obstructed in their religious worship. *Opinion of the Justices*, 214 Mass. 599, 601 (1913). Article 2 of the Declaration of Rights protects religious beliefs by providing that "no subject shall be hurt, molested, or restrained in his person, liberty, or estate . . . for his religious profession or sentiments." As a practical matter, this protection of religious beliefs is substantially absolute under art. 2 as well as under art. 46, § 1, of the Amendments and the First Amendment.[13] This aspect of art. 2 is not involved in this case because we are not dealing with any restraint on the defendants' religious professions or sentiments.

---

[12]Article 2 provides: "It is the right as well as the duty of all men in society, publicly, and at stated seasons to worship the SUPREME BEING, the great Creator and Preserver of the universe. And no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience, or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

[13]The exceptions in art. 2 (disturbing the public peace and obstructing the religious worship of others) are not likely to come into play when only art. 2's protection of beliefs is involved.

Article 2 also protects religious practices by providing that "no subject shall be hurt, molested, or restrained . . . for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience." This protection concerns conduct, the "manner and season" of worshiping God. That conduct may invoke one or both of the exceptions in art. 2: that the conduct must "not disturb the public peace or obstruct others in their religious worship." Art. 2. If neither exception applies, by its terms, art. 2 gives absolute protection to the manner in which one worships God. No balancing of interests, the worshiper's, on the one hand, and the government's, on the other, is called for when neither exception applies.

Our cases concerning art. 2 have not defined the scope of the concept of worshiping God, that is, if neither art. 2 exception applies, that conduct which is constitutionally protected absolutely. They do, however, provide some guidance. See *Society of Jesus of New England* v. *Boston Landmarks Comm'n*, 409 Mass. 38, 42 (1990); *Commonwealth* v. *Nissenbaum*, 404 Mass. 575, 578-579 (1989).[14]

---

[14]The *Nissenbaum* opinion imported into art. 2 analysis the balancing test that then applied under the First Amendment's free exercise of religion provision. See *United States* v. *Lee*, 455 U.S. 252, 256-259 (1982); *Wisconsin* v. *Yoder*, 406 U.S. 205, 215-229 (1972).

Beyond the *Society of Jesus* and *Nissenbaum* cases, there is little that defines the reach of art. 2 as to conduct. In a considerably older opinion, this court held that an obligation to recite the pledge of allegiance to the American flag did "not in any reasonable sense hurt, molest, or restrain a human being in respect to 'worshipping God' within the meaning of words in the Constitution." *Nicholls* v. *Mayor & Sch. Comm. of Lynn*, 297 Mass. 65, 71 (1937). That result could not stand today in light of *West Virginia State Bd. of Educ.* v. *Barnette*, 319 U.S. 624 (1943). See *Opinions of the Justices*, 372 Mass. 874, 878 (1977). More recently, we have held that art. 2 was not violated when an employee was discharged because she declined to attend an employer-mandated, nondenominational seminar that used references to Scriptural texts to reinforce and illustrate its teachings. *Kolodziej* v. *Smith*, 412 Mass. 215 (1992). The opinion, however, dealt with the beliefs aspect of art. 2, not its worshiping aspects (*id.* at 220), and treated art. 2 in conjunction with parallel First Amendment considerations.

The court need not pass on the application of art. 2 in this case because whatever protections it offers to the defendants are available to them under art. 46, § 1, which we have already discussed.[15] The three Justices who join this opinion reach this conclusion because, even if the defendants' selective leasing of their commercial property involves "worshipping GOD in the manner and season most agreeable to the dictates of [their] own conscience," that conduct in violation of a State statute would disturb the peace (see *Commonwealth* v. *Nissenbaum, supra* at 582-583; *id.:* at 592-593 [Liacos, J., dissenting]), and, therefore, there would have to be a balancing of competing interests to decide whether G. L. c. 151B, § 4 (6), is properly enforceable against the defendants. This balancing process is similar to the task that the three Justices who join this opinion and the Chief Justice in partial concurrence agree must be conducted under art. 46, § 1, on remand on this case. No balancing of competing interests under art. 2 is required in this case because the competing interests standard under art. 2 is no more favorable to the defendants than the requirement under art. 46, § 1, that the Commonwealth demonstrate a compelling State interest in justification of the application of the statute to the defendants.

4. The judgment for the defendants is vacated, and the case is remanded to the Superior Court for further consideration of the question whether art. 46, § 1, bars application of G. L. c. 151B, § 4, to the defendants in the circumstances of this case.

*So ordered.*

LIACOS, C.J. (concurring). I agree with the result reached by the court today. I agree also with the court's analysis of the protections provided the people of this Commonwealth

---

[15]The three dissenting Justices agree with this conclusion because they decide that art. 46, § 1, absolutely protects the defendants' right to decline to lease any premises to a cohabiting couple.

under art. 46, § 1, of the Amendments to the Massachusetts Constitution, including the court's statement that under art. 46, "we prefer to adhere to the standards of earlier First Amendment jurisprudence, such as we applied in *Alberts* v. *Devine*, 395 Mass. 59, 74-75, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985), and *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 375, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982)." *Ante* at 321. Our Constitution precedes and was, in large measure, the model for the Federal Constitution. In light of this court's reaffirmation today of its desire to develop further our own constitutional jurisprudence, I cannot but wonder why the court and the dissenting Justices decline to examine more thoroughly the protections afforded by art. 2 of the Declaration of Rights of the Massachusetts Constitution and are unwilling to decide whether art. 2 reaches the activities of the defendants. Thus, I write separately to express my view on the scope of the protection afforded by art. 2.

In declining to address whether art. 2 reaches the conduct of the defendants, the court reasons that "[a]rticle 2 is important to this case only if it grants greater protection to the defendants than do either the First Amendment or the cognate free exercise of religion provision appearing in art. 46 . . . ." *Ante* at 322. This reasoning puzzles me, as it is unclear to me why art. 46 should be the starting point in an analysis of our Constitution's protections for religious freedom. As the court notes, conduct falling within the scope of art. 2 and which does "not disturb the public peace, or obstruct others in their religious worship" is protected absolutely. *Opinion of the Justices*, 214 Mass. 599, 601 (1913). *Nicholls* v. *Mayor & Sch. Comm. of Lynn*, 297 Mass. 65, 70-71 (1937). *Society of Jesus of New England* v. *Boston Landmarks Comm'n*, 409 Mass. 38, 41-42 (1990). Accordingly, if the conduct of the defendants falls within art. 2's scope and neither disturbs the public peace nor disturbs the religious worship of others, then the conduct would be protected absolutely.

Article 2 of the Declaration of Rights provides that "no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, *for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience, or for his religious profession or sentiments*; provided he doth not disturb the public peace, or obstruct others in their religious worship" (emphasis supplied).[1] The language of art. 2 does not limit the mode or manner of worship to commonly recognized forms of worship.[2] On the contrary, the language, "in the manner and season most agreeable to the dictates of [an individual's] conscience" unambiguously indicates that a

---

[1]The full text of art. 2 provides: "It is the right as well as the duty of all men in society, publicly, and at stated seasons to worship the SUPREME BEING, the great Creator and Preserver of the universe. And no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience, or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

[2]The author of the court's opinion wrote separately in *Commonwealth* v. *Nissenbaum*, 404 Mass. 575, 584 n.1 (1989) (Wilkins, J., concurring), that "conduct protected by art. 2 must be conduct commonly regarded as religious conduct." I note that this statement in Justice Wilkins's concurrence in *Nissenbaum* was made despite his position that the constitutional issues in that case need not be addressed, *Nissenbaum, supra* at 588 n.1 (Liacos, J., dissenting), and was made without citation of authority for that proposition. *Id.* at 584 n.1 (Wilkins, J., concurring).

I cannot agree that particular conduct will not be recognized as worship by this court merely because that conduct is not within the conception of worship espoused by a majority of the Justices of this court, past or present. Nor can I agree that conduct must be "*commonly* regarded as religious conduct" for it to fall within the scope and protection of art. 2 (emphasis supplied). These propositions suggest that only those forms of worship that are acceptable in the opinion of the majority of society will receive consideration under art. 2. In my view, these propositions are contrary to the essence of art. 2, as shown in both the plain language of that provision and in our case law interpreting it.

I do not suggest that an individual may assert any conduct as worship and then be permitted to practice that conduct unchecked. Article 2 itself prohibits an individual from "disturb[ing] the public peace, or obstruct[ing] others in their religious worship." Furthermore, an individual must believe sincerely that his conduct is worship, and a court permissibly may examine the sincerity of that belief. See *United States* v. *Ballard*, 322 U.S. 781 (1944).

citizen is free to decide for himself or herself the method by which he or she will worship.[3]

Our case law supports the notion that this court should not attempt to decide whether a form of worship chosen by an individual based on his sincere religious beliefs is deserving of art. 2 protection. Under art. 2, all citizens are guaranteed "liberty unrestrained as to religious practices, subject only to the conditions that the public peace must not be disturbed nor others obstructed in their religious worship or the general obligations of good citizenship violated." *Opinion of the Justices,* 214 Mass. 599, 601 (1913). *Nicholls* v. *Mayor & Sch. Comm. of Lynn,* 297 Mass. 65, 70 (1937). *Society of Jesus of New England* v. *Boston Landmarks Comm'n,* 409 Mass. 38, 41 (1990). *Commonwealth* v. *Nissenbaum,* 404 Mass. 575, 591 (1989) (Liacos, J., dissenting). See *Nissenbaum, supra* at 582 n.5 ("Any person may worship in the manner he thinks most agreeable to the Deity"), quoting The Popular Sources of Political Authority, Documents of the Massachusetts Constitution of 1780, at 32-33 (O. and M. Handlin, eds. 1966); *Society of Jesus, supra* at 41 ("The framers and ratifiers understood the right freely to exercise one's religion to be an uncompromising principle"); *id.* at 41-42 ("great object . . . was 'to secure and establish the most perfect and entire *freedom* of opinion, as to tenets of religion, and *as to the choice of the mode of worship*' "), quoting *Adams* v. *Howe,* 14 Mass. 340, 346 (1817).

The decision by an individual as to what form of religious worship constitutes an appropriate vehicle by which to pay homage to a chosen object of that worship can hardly be characterized as anything but a religious belief or sentiment, for it is religious belief which informs, and serves as the

---

[3]The dictionary definition of "worship" lends to this argument. The verb "worship" means "to honor or reverence as a divine being or supernatural power" or "to perform . . . worship." The noun "worship" means the "reverence or veneration tendered a divine being or supernatural power." Webster's Third New Int'l Dictionary 2637 (1993). Thus, an act of worship could be any act by which a person, in his belief, shows honor or reverence to the object of his worship.

foundation for, that choice. Accordingly, if this or any court purports to consider whether a practice is truly a form of worship, then in essence the court is inquiring into the validity of a religious belief. No civil court, however, may make such an inquiry. *Murphy* v. *I.S.K.Con. of New England, Inc.*, 409 Mass. 842, 854, cert. denied, 502 U.S. 865 (1991), quoting *Madsen* v. *Erwin*, 395 Mass. 715, 722 (1985). *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 772 (1986). *Alberts* v. *Devine*, 395 Mass. 59, 72 (1985), and cases cited. See *Norwood Hosp.* v. *Munoz*, 409 Mass. 116, 124-125 n.5 (1991).[4]

The court states that this case does not involve "any restraint on the defendants' religious professions or sentiments" and therefore, the court concludes, art. 2's protection of "religious profession or sentiments" is not implicated in this case. *Ante* at 332. The court gives no reason for this conclusion. Thus, the court continues, if art. 2 is applicable at all, only the provision of art. 2 which protects "worshipping" is called into play in this case. I cannot agree. Contrary to the court's conclusion, which implicitly defines "religious profession or sentiments," I believe that, in the circumstances of this case, the protection in art. 2 for "religious profession or sentiments" is relevant here.[5] While the defendants have ad-

---

[4]Furthermore, it is not relevant whether the belief is shared by an organized sect or church, or, for that matter, by any other person. See *Kolodziej* v. *Smith*, 412 Mass. 215, 220 (1992).

Although the court in *Nicholls* v. *Mayor & Sch. Comm. of Lynn*, 297 Mass. 65, 70 (1937), noted that the State Constitution "guarantees 'absolute freedom as to religious belief and liberty unrestrained as to religious practice,'" it went on to conclude that requiring the plaintiff to recite the pledge of allegiance to the flag did not violate that plaintiff's religious freedom even though his religious beliefs required that he not salute the flag. *Id.* at 71-73. The court, in effect, interpreted the meaning of the plaintiff's religious beliefs. I doubt whether the inquiry performed by the court in *Nicholls* would be permissible today, and in any event, I do not agree with the court's conclusion in that case.

[5]This court has not had occasion to discuss the meaning of the terms "profession" or "sentiment" as used in art. 2. The common meanings of those words are instructive, however. "Profession," in the sense it is used in art. 2, is "an act of openly declaring or publicly claiming a belief, faith, or opinion; an avowed statement or expression of intention or purpose." Web-

mitted that they in fact have refused in the past to rent to unmarried, cohabiting couples and would have refused to rent to Lattanzi and Tarail, assuming that they would have cohabited, the event immediately precipitating this action was one telephone call made by Tarail.[6] The content of the conversation which took place was disputed, but the judge found that Paul Desilets imparted to Tarail that he would not rent to unmarried cohabiters because to do so violated his religion. The conversation then ended without Tarail pressing the matter further.

As I see it, then, the action of the defendant on which this suit was founded was his profession of his religious belief that cohabitation of unmarried persons is a sin.[7] Therefore, the facts of this case also implicate the protection afforded to the defendants' "religious profession or sentiments." I would not dispose of this issue, as the court does without analysis, *ante* at 332, by reciting that the protection in art. 2 for religious profession or sentiments is not involved in this case.

In my opinion art. 2 covers the actions of the defendants. As a result, their conduct is deserving of art. 2 protection unless it disturbs the public peace. See *Commonwealth v. Orlando,* 371 Mass. 732, 734-735 (1977) (disturbance of

---

ster's Third New Int'l Dictionary 1811 (1993). A "sentiment" is "an attitude, thought, or judgment permeated or prompted by feeling" or "a specific view or notion." *Id.* at 2069. Under the plain meaning of these words, it is clear that, in the telephone conversation giving rise to this action, the defendant professed his religious sentiment.

[6]The record suggests that Lattanzi also may have contacted one of the defendants or the wife of one of the defendants to inquire about an apartment and was told of the policy against renting to unmarried, cohabiting couples.

[7]It is unfortunate that the court unnecessarily reaches out in dictum, to describe G. L. c. 272, § 18 (1992 ed.), which makes fornication a crime, as being a statute of "doubtful constitutionality." *Ante* at 328-329. Similar claims of unconstitutionality were made — and rejected — as to the crime of adultery (G. L. c. 272, § 14). See *Commonwealth v. Stowell,* 389 Mass. 171, 173 (1983). *Stowell* is an opinion in which the author of the court's opinion in the case at bar joined. One need not address the constitutional issue as to G. L. c. 272, § 18, to conclude that the Legislature has expressed a public policy which the defendants, for religious reasons, share.

public peace occurs when conduct "tends to annoy all good citizens and does in fact annoy anyone present not favoring it"); *Nissenbaum, supra* at 592 (Liacos, J., dissenting) (conduct disturbs public peace when it is unreasonably disruptive, and second, did in fact infringe someone's right to be undisturbed). Although the judge found that there was no disturbance of the public peace, it does not seem to me that the issue was addressed completely by the parties below. I would remand this case for further proceedings and a determination whether the defendants' actions disturbed the public peace. See *Nissenbaum, supra* at 591-593 (Liacos, J., dissenting).[8] If the judge determines that the defendants' conduct did disturb the public peace,[9] the judge should then balance the State's interest in maintaining the public peace which was disturbed against the defendants' rights under art. 2. *Id.* at 581-583 (court notes that balancing of competing interests is required under art. 2 when disturbance of public peace is found, and court then notes that it performed such a balancing in that case).


O'CONNOR, J. (dissenting, with whom Nolan and Lynch, JJ., join). In keeping with their sincerely held religious beliefs, the defendants consider an unmarried couple's living together in a sexual relationship to be an offense against God. Also in keeping with their sincerely held religious beliefs, the

---

[8]On this record, I could not conclude that the public peace was disturbed merely because a statute allegedly was violated. See *Nissenbaum, supra* at 591-593 (Liacos, J., dissenting). More importantly, the court's suggestion that the public peace was disturbed by virtue of a violation of a State statute is based on faulty logic. Our inquiry is whether the application of the statute in this case violates the religious rights of the defendants. If their rights would be violated unconstitutionally by application of the statute to their conduct, then the statute could not be applied to their conduct and, as a result, there would be no violation of the statute which could be the basis for finding a disturbance of the public peace. The underlying conduct, however, could be examined in the manner I outlined, *id.* at 592.

[9]There is nothing at all in the record which would suggest that the defendants' conduct interfered with someone else's worship.

defendants consider enabling or assisting another in the commission of an offense against God to be itself an offense against Him. Responding to those religious convictions, and out of respect for the will of God, the defendants refused to rent an apartment to an unmarried couple living in a sexual relationship (cohabiting couple). The court now concludes that an evidentiary hearing — a trial — is required before a determination can be made concerning whether the defendants may lawfully be forced to choose between violating their religiously informed consciences or withdrawing from their commercial endeavors. I disagree. No combination of facts that might be found after a trial would legally justify the imposition of such a choice. I would affirm the summary judgment for the defendants.

I agree that, as applied to this case, (1) art. 46, § 1, of the Amendments to the State Constitution provides at least as much protection to the free exercise of religion as does art. 2 of the Massachusetts Declaration of Rights and the First Amendment to the United States Constitution; (2) the court should reach its own conclusions on the scope of the protections of art. 46, § 1; and (3) in interpreting art. 46, § 1, the court should use the balancing test that the Supreme Court established in *Wisconsin* v. *Yoder*, 406 U.S. 205, 215-229 (1972), *Sherbert* v. *Verner*, 374 U.S. 388, 406-409 (1963), and subsequent opinions.

Because the defendants' right to the free exercise of their religion is substantially burdened by the operation of G. L. c. 151B, § 4 (6), *ante* at 324, a matter about which none of the Justices seems to disagree, the Commonwealth would be required at trial to prove that "it has an interest sufficiently compelling to justify that burden." *Ante* at 322. In reviewing the entry of summary judgment for the defendants, then, the question before the court is whether the defendants have demonstrated "by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the [Commonwealth, which will have the burden of proof at trial], has no reasonable expectation of proving an essential element of [its] case." *Kourouvacilis* v. *General Motors*

*Corp.*, 410 Mass. 706, 716 (1991). In my view, the defendants have succeeded in that regard. It is clear from the summary judgment materials that the Commonwealth can have no reasonable expectation of sustaining its burden of proving at trial an essential element of its case, which is that the Commonwealth has an interest in ensuring the availability of rental housing for unmarried couples with a sexual relationship — a relationship prohibited by G. L. c. 272, § 18 (1992 ed.) — that outweighs the defendants' interest in conforming their conduct to the will of God without State-imposed penalty.

"[M]arital status discrimination is not as intense a State concern as is discrimination based on certain other classifications." *Ante* at 327. In contrast, the right to free exercise of religion is· a fundamental right. Thus, the Commonwealth's interest in accommodating cohabitation cannot possibly outweigh the defendants' interest in conforming their conduct to their religious conviction without penalty, regardless of whether, after a trial, a fact finder might be satisfied that "the rental housing policies of people such as the defendants can[not] be accommodated, at least in the Turners Falls (Montague) area, without significantly impeding the availability of rental housing for people who are cohabiting or wish to cohabit." *Ante* at 329. Even if "discrimination of the sort challenged here [were to] present a significant housing problem if a large percentage of units [were to be] unavailable to cohabitants," *ante* at 329, that is, even if discrimination of the sort challenged here were to make it difficult or impossible for unmarried couples to cohabit in Turners Falls or elsewhere, neither the court nor the Legislature can constitutionally give preference or priority to a so-called "right" of cohabitation over the moral and other fundamental values recognized in, and promoted by, the Massachusetts Constitution's clearly articulated guarantees of the free exercise of religion.

The court states that "[t]here are factual circumstances that bear on the question [balancing of the State's and the defendants' interests], both as to the existence of a general

State interest in the elimination of discrimination in housing based on marital status and as to the existence of a particularized State interest in the Turners Falls area. Uniformity of enforcement of the statute may be shown to be the least restrictive means for the practical and efficient operation of the antidiscrimination law." *Ante* at 331. The court gives no hint of what circumstances could be shown that would permit a reasonable inference that the Commonwealth's interest in eliminating discrimination in housing based on marital status can only be served by punishing landlords for holding fast to the commitments dictated by their religious beliefs. I can envision no such circumstances. This case is not even remotely similar to *Bob Jones Univ.* v. *United States*, 461 U.S. 574 (1983) (eradication of racial discrimination in education is compelling State interest, superseding any free exercise right of petitioners) or *United States* v. *Lee*, 455 U.S. 252 (1982) (overriding interest in operation of national social security system is compelling) cited by Justice Wilkins. *Ante* at 330.

The court can safely say, and should hold, that it is clear from the submissions in this case that the Commonwealth has no reasonable expectation of proving an essential element of its case. The court should affirm summary judgment for the defendants. If the Massachusetts Constitution is to be effectively amended by giving rights of cohabitation preferred status over an individual's right to live according to his or her religiously-informed conscience, a result I do not recommend, that amendment should be achieved by lawful procedures for constitutional amendment, not by judicial fiat.