Welch, J.
This case presents the issue of whether the City of Lynn School Department may constitutionally condition approval of a home school plan on periodic home visits. The purpose of these twice yearly, announced visits is to observe the instructional process and ensure that the home schooling plan is being implemented.
The plaintiffs, the parents of children who are of compulsory school age, desire to teach their children at home. They describe themselves as holding “Evangelical Christian beliefs" and, based upon these religious beliefs, assert that they must “provide, direct, and oversee the education of their own children.” Complaint par. 20. The plaintiffs live in Lynn, Massachusetts. The Lynn Public School Department has approved the plaintiffs’ home schooling applications; only one issue prevents an agreement between the plaintiffs and the defendant. As the parties agree, “the only real issue preventing approval of the plaintiffs’ home instruction plan is their refusal to consent to home visits."
The parties agree that the plaintiffs are sufficiently competent to act as home teachers[1] and are satisfied that the subjects taught and the materials used are sufficient to satisfy the requirements of G.L.c. 76, §1 (“School Committee shall approve a private school when satisfied that the instruction in all the studies required by law equals the thoroughness and effi *8 ciency, and in the progress made therein, [as] in the public school in the same town . . .”). See Care & Protection of Charles, 399 Mass. 324 (1987) (holding that approval of home schooling falls within this statute and equates such schooling with a “private school”). The plaintiffs agree to submit their children’s standardized test results to the School District. The plaintiffs object to that portion of the School Department’s home instruction policy that requires the parents to allow the Superintendent (or his or her designee) to “observe and evaluate the instructional process” that is occurring in the home setting. This is referred to as a “home visit” and it is to occur once or twice a year and is arranged one week in advance.[2]
The plaintiffs claim that by imposing the requirement of home visits as a precondition for approving the home schooling of their children, the School Department for the City of Lynn has violated numerous provisions of the Massachusetts State Constitution.[3] In their complaint for declaratory judgment, the plaintiffs assert that placing such a condition of “home visits” exceeds the statutory authority conferred upon the School Department by G.L.c. 76, §1. In addition, the plaintiffs claim that such home visits constitute unconstitutional warrantless searches in violation of Article 14 of Massachusetts Declaration of Rights, restrictions upon the right to the free exercise of religion as guaranteed by the Massachusetts Constitution, and a deprivation of a right to a private education in the home setting as it is protected by the Massachusetts Constitution. The plaintiffs demand both declaratory and injunctive relief. The City of Lynn disagrees with these legal assertions but agrees that there presently exists no disputed issues of material fact. Therefore, both sides agree that this matter is ripe for decision on a summary judgment basis pursuant to Rule 56 of Mass. Rules of Civil Procedure.
A. The Delicate Balance.
This case presents three separate constitutional protections. One is the parent’s right to bring up their children in the way that they believe is most appropriate, including religious and educational instruction at home. The Supreme Judicial Court, relying upon the United States Supreme Court’s interpretation of “the liberty interests protected by the Fourteenth Amendment,” has recognized this right in Care & Protection of Charles, 399 Mass. 324, 334-35 (1987). See also Pierce v. Society of Sisters, 262 U.S. 510, 535 (1925); Wisconsin v. Yoder, 406 U.S. 205 (1972). Intertwined with the home schooling proposed in this case, are the plaintiffs’ guarantees of freedom of religion, namely the freedom to observe and to teach the tenants and practices of their faith. And, finally, the plaintiffs plainly have a right under both the Massachusetts and federal constitutions to be free of any illegal searches of their homes. Counterbalanced to these cherished rights is the compelling interest that the state has in educating its citizens. Care & Protection of Charles, supra at 334 (“such a right [to home schooling] is not absolute and must be reconciled with the substantial state interest in the education of its citizemy”). No one in this case discounts the Commonwealth’s compelling interest in insuring that the children of the Commonwealth are provided an adequate education, either in the public, private, or home setting. Our democracy is dependent upon an educated and informed citizenry. Ambach v. Norwick, 441 U.S. 68, 75-76 (1976); Wisconsin v. Yoder, 406 U.S. at 213, 221; Brown v. Board of Educ., 347 U.S. 483, 493 (1954); New Life Baptist Church Academy v. Town of East Longmeadow, 885 F.2d. 940, 944 (1st Cir. 1989), cert. denied, 494 U.S. 1066 (1990).
The Supreme Court of the United States has confronted a similar juxtaposition of interests and its words are particularly appropriate in this case.
To make accommodation between these freedoms and an exercise of state authority always is delicate. It hardly could be more so than in such a clash as this case presents. On one side is the obviously earnest claim of freedom of conscience in religious practice. With it is allied the parent’s claim to authority in her own household and in the rearing of her children. The parent’s conflict with the state over control over the child and his training is serious enough when only secular matters are concerned. It becomes the more so when the element of religious conviction enters. Against these sacred private interests, basic in a democracy, stand the interests of society to protect the welfare of children, and the state’s assertion of authority to that end ... It is the interest of youth itself, and of the whole community, that children be . . . given opportunities for growth into free and independent well-developed men and citizens.
Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 165 (1944).
The Massachusetts Supreme Judicial Court struggled with this balance in the Care & Protection of Charles case, supra at 336-40. The state’s interest lies “in insuring that the children residing within the state receive an education, not that the educational process be dictated in its minutest detail.” Id. at 336. Thus, the School Committee is entitled to “impose reasonable regulations for the control and duration of basic education.” Id., quoting Wisconsin v. Yoder, supra at 213. See also New Life Baptist Church Acad. v. East Longmeadow, 885 F.2d at 945 (standards applied in approving or disapproving educational program “must be reasonable”). While recognizing that courts “are not school boards . . . and are ill equipped to determine the ‘necessity’ of discrete aspects” of a school district’s approval process for home school education, the Supreme Judicial Court has noted that “approval of a home school proposal must not be conditioned on requirements that are not essential to the state interest in insuring that all children shall be educated.” Id *9 at 337. The Supreme Judicial Court has implied that home visits would be an appropriate condition when approving home schooling proposals but has also noted that “with appropriate testing procedures or progress reports, there may be no need for periodic on site visits or observations of the learning environment by school authority personnel.” Care & Protection of Charles, supra at 340.
B. Whether Announced, Limited Inspections are Authorized by G.L.c.76, §1 and are Compatible with the Constitutionally Recognized Right to Home School.
The facts in this case bring this Court hard up against the issue left open in Care & Protection of Charles, namely whether a school board would be prohibited from periodic home visits if the parents agreed to appropriate standardized testing procedures. One of the difficulties in a case such as this is that the dispute stems from two equally well-intentioned positions. The Assistant Superintendent of the Lynn Public Schools, Dr. Lewis Perullo, emphasized that he has no doubt about the capacity of the plaintiffs to educate their children and the sincerity of their beliefs. “Their motives, their interests, their purposes, their commitments have never been a question in my mind.” Perullo Deposition, p.31. Nor does anyone dispute the value of home schooling for those families who have the competence, desire and dedication to teach their children in this often fulfilling and less structured manner. See Amicus Curiae Memorandum of Nancy Hardenbergh. Because the plaintiffs seek a declaratory judgment against the entire school policy of home visits to any home, however, this case does not revolve around their own sincerity or teaching competence.[4] When asked at his deposition about the reason for conditioning approval of a home education plan upon home visits, Dr. Perullo eloquently answered:
The question comes down to did in fact they do it [implement the home schooling plan], and we are not just dealing with . . . the Pustells and the Brunelles [i.e. the plaintiffs], but we’re dealing with all kinds of people. All kinds of people that can write a plan and do nothing with it, and the state has got an interest, society has got an interest in making sure that that cannot happen . . . We don’t educate our kids just for the students, we do it for society and that’s the whole point of why we’ve got a compelling interest in this issue and that’s why I implement this policy as an administrator. We tax ourselves, we spend our treasure on educating our youth for the future. We have an interest in making sure that that does indeed happen.
Perullo Deposition at p. 26.
There is no dispute that the required periodic observation is “not a family observation or a home observation.” Id. at pp. 12-13.[5] Instead, the sole reason for the home visit is to observe whether the instructional process is actually taking place. The School Committee only requires a maximum of two such home visits a year. As Dr. Perullo testified, such visits preferably would be one in the fall and another in the spring. Such visits would last no more than 40 to 45 minutes and would be announced a week ahead of time. The home visit would have to be at a time convenient to the parent and would be rescheduled if not convenient. Id. See also Perullo Deposition at p. 21. No particular subject need be taught during the visit. “It’s all really low key and laid back and relatively informal because we don’t want to cause a problem.” Perullo Deposition at 21. The principal of the school which the child would have been attending is the individual making the observation. That principal is provided a copy of the home instruction plan approved by the school committee. Perullo Deposition at 20.
Such a home visit has a limited, albeit an important purpose, namely, to verify that indeed a home schooling plan has been implemented and that some fype of instruction is going on in accordance with the materials and curriculum approved previously by the school board. At least as implemented by Lynn, the home visit makes no attempt to review the home schooling “in its minutest detail.” Care & Protection of Charles, supra at 336. Nor is it an attempt to determine the method of teaching or the competency of the teacher. The teacher competency is determined as part of the initial process when the School Committee reviewed the home teacher’s qualifications. Instead, the visit is simply an attempt to make sure that the home school plan which had been approved has been implemented and that some sort of instruction is actually taking place within the home. Dr. Perullo described the limited purpose of the home visit in his deposition:
So he [the principal] goes in, he observes what’s happening, he observes the instruction, he observes the teacher doing certain things, he observes the students doing certain things, he sees the interactions, he sees the use of materials that’s consistent with the curriculum that’s stated in the plan, and he gets admittedly a subjective judgment, but based upon years of experience, that there is indeed instruction going on and he can tell if it’s made up or if it’s not made up.
Although we can be fooled, I would say that it’s not very often, so that what he gets a sense of is that the process that was delineated in the plan, which is the plan, that that plan process was indeed in fact an actual occurrence, and that’s the key piece to the home visit.
Perullo Deposition at p. 12. ‘The state is limited to satisfying itself that the parent’s program is being implemented in ‘good faith and that it is sufficient in extent.’ ” Perchemlides v. Frizzle, Sup. Ct. Civ. No. 16641 (Hampshire County) (Nov. 13, 1978) (Greaney, J.), quoting Commonwealth v. Roberts, 159 Mass. 372, 374 (1893). The visitation requirement is solely tai *10 lored to insuring this state interest in actual implementation.
Given the limited purpose of the home visit, it is understandable that the school department does not have any standardized appraisal for the home visit. Indeed, there are not many families in Lynn which have taken advantage of the option of home schooling and, those that do, undoubtedly have significantly different types of teaching methods and programs. After all, this is one of the strengths of home schooling. Home schooling is often likely not to take the traditional form of a parent sitting at a table teaching a child certain lessons. Indeed, the “classroom” may be a field trip, an educational television show, or the baking of muffins to explain certain measurements and mathematical concepts. Thus, the fact that the periodic inspection is a “relatively informal” process that relies upon a “subjective judgment” as to whether actual instruction is occurring in connection with the educational plan is almost inevitable. Of course the school district could promulgate a standardized check list or form for the periodic visits, but the ultimate conclusions that the educational plan is being implemented and that instruction is occurring still would be largely subjective.[6]
The plaintiffs make a vigorous attack upon this visitation process and argue that it is meaningless and provides “no reliable information in making [the] determination [regarding] . . . the thoroughness and efficiency of the home school . . .” See Affidavit of Dr. Lawrence Rudner. The plaintiffs buttress this argument by stating that Lynn is the only school district that the plaintiffs know of that has this home visitation requirement. Thus, the plaintiffs press the language in Care & Protection of Charles that indicates that “there may be no need for periodic on site visits or observations of the learning environment by school authority personnel” when there are appropriate testing procedures available.
The plaintiffs’ reliance upon standardized testing and their disparagement of the asserted novelty of Lynn’s approach miss an important point. As Dr. Perullo explained in his deposition, periodic standardized testing is an important tool to determine whether or not adequate education is occurring in the home. See e.g., Deposition, p.54. Such standardized testing, however, only establishes one child’s ability to score well in a certain type of test. The Commonwealth also has an interest in insuring that actual education is ongoing, no matter how novel or personalized that educational approach may be. There is no doubt that the school officials have the power to authorize the use of a certain curriculum and require that the educational process extend for a certain duration. Care & Protection of Charles, 399 Mass. at 338. A home visit is one of the most efficient methods in which to insure that such materials are being used and that the durational requirement is being met. A standardized test provides no insight into these matters. The Commonwealth does have a compelling interest in insuring that an instructional process is actually being carried out. A home visit is a reasonable method by which to verify this limited, albeit important, fact. A home visit may even have the salutatory effect of providing the parent advice as to how to make the home schooling experience even more effective. Furthermore, it is not unduly cynical to conclude that the prospect of two short announced home visits a year might encourage the adult in charge of the education to make extra efforts in the home instructional process. Thus, Lynn’s announced, twice-yearfy, brief and focused inspections are “reasonable regulations for the control and duration of basic education.” Id. at 336, quoting Wisconsin v. Yoder, supra at 213. Such inspections do not attempt to interfere with the method by which the subjects are taught and do not attempt to place restrictions upon the instructional process.
The fact that Lynn may be unique in requiring home visits never has been considered a legal bar to any activity. Indeed, one can easily envision certain types of home schooling proposals in which a home visit may be the only method in which a child, who could not be evaluated well by standardized testing, is insured of an adequate education. Even if standardized testing does adequately assess a student’s past educational achievement, the combination of testing and periodic observation may be the most effective method of insuring not only the presence of a competent (or gifted) student but also the actual implementation of a home school plan that will further enhance the student’s education. The United States Court of Appeals for the First Circuit likewise upheld East Longwood’s District’s proposed approval system which included observation and evaluation visits to a private religious academy and rejected the academy’s proposed alternative of relying upon standardized tests. As then Judge (now Justice) Breyer wrote: “Can the school committee safely rely upon standardized testing to determine what will occur in the classroom? . . . School visits offer the committee a way of finding out what does actually occur in respect to teaching; tests at best, reveal what has occurred.” New Life Baptist Church Acad. v. East Longmeadow, supra at 948 (emphasis in original). Our country is made up of not only 50 separate states representing laboratories of experimentation, to paraphrase Justice Brandéis’ famous quote, but also innumerable school districts confronting the challenging problems of public education in increasingly diverse ways. Our democracy is not well served if courts hinder educational experimentation or innovation by insisting on a standardized set of procedures not dictated by the Constitution. See Care & Protection of Charles, supra at 337 (courts are “ill-equipped to determine necessity of discrete aspects” of school district’s compulsory education program).
*11 Therefore, this Court concludes that the defendant plainly has the authority under G.L.c. 76, § 1 to require the limited, periodic and pre-announced visits and that those periodic observations serve a limited, but important, governmental interest. Nothing in the cases that recognize a constitutional right to a home education bar such a limited visitation. Even if the home visitation requirement is a reasonable and authorized procedure, it is invalid if it unduly infringes upon any of the plaintiffs’ specific rights of freedom of religion or freedom from unreasonable searches as guaranteed by the Massachusetts Constitution. Upon reflection, this Court holds that no such constitutional protections have been violated.
C. The Free Exercise Clause of the Massachusetts Constitution.
The plaintiffs claim that their religious beliefs compel them to educate their children at home and to teach religious values as part of that home schooling. No one doubts the sincerity of these beliefs. The plaintiffs argue that the school district’s insistence on the home visit requirement effectively prevents them from home schooling their children. Thus, the plaintiffs assert that the requirement of announced periodic inspections violates their freedom of religious expression as it is protected by Article 46, §1 of the Amendments to the Massachusetts Declaration of Rights. The plaintiffs do not claim that they have any religious beliefs regarding home visits or periodic inspections by school personnel, only that their religion compels them to personally educate their children, in accordance with their religious values, within a home setting.
Article 46, §1 of the Amendments of the Declaration of Rights provides that “no law shall be passed prohibiting the free expression of religion.” Although this phrasing parallels the First Amendment of the United States Constitution, the Supreme Judicial Court has ruled that the Massachusetts Constitution adopts the First Amendment jurisprudence as it existed before the Supreme Court’s controversial decision of Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990). See Attorney General v. Desilets, 418 Mass. 316, 321 (1994).
In order to succeed on a State Constitutional free exercise claim, the plaintiffs first must establish that the defendant’s home visitation requirement “substantially burdens” the exercise of their sincerely held religious beliefs. Curtis v. School Committee of Falmouth, 420 Mass. 749, 761 (1995); Attorney General v. Desilets, 418 Mass. at 322. If such a burden exists, it can only be upheld utilizing the “balancing test that the Supreme Court has established under the free exercise of religion clause in Wisconsin v. Yoder." Id. at 321. Such a balancing test requires the existence of the compelling state interest that is achieved by a least restrictive means. See New Life Baptist Church Academy v. Town of East Longmeadow, 885 F.2d. at 946 (containing an excellent discussion of pre-Smith Supreme Court precedent involving balancing of compelling state interest against probable burdens upon religious freedom).
The plaintiffs have failed to establish any substantial burden upon their exercise of religion. The twice yearly pre-announced visits are indeed compulsory. Curtis v. School Committee of Falmouth, 420 Mass. at 761. As previously discussed, such periodic inspections are content neutral and are limited to insuring that instruction is actually taking place in accordance with the approved home schooling plan. See New Life Baptist Church Academy v. East Longmeadow, supra at 953 (“given the simple ‘check up’ purpose of the visit, and interpreting the proposal reasonably, we cannot say that the state is embarking upon the kind of mission that seems likely to force it to ‘examine the content and curricula of religious programs’ ’’). Indeed, Massachusetts law prohibits any interference with religious education. G.L.c. 76, §1. There is absolutely no allegation that the home visits by themselves violate any religious tenet held by the plaintiffs. Contrast New Baptist Church Academy v. East Longmeadow, supra (plaintiffs claimed .that their religion prevented them from submitting to governmental approval of school). Thus, this is not a case that the plaintiffs are engaging in some sort of religious inspired conduct which, in turn, results in the government denying some benefit. See, e.g., Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 699 (1989) (lack of tax exemption for particular religious practices within Church of Scientology unlikely to be substantial burden upon religion as neither the payment nor receipt of the taxes was forbidden by the Scientology philosophy). Compare Hobbie v. Unemployment Appeals Commission of Florida, 480 U.S. 136, 141 (1987) (religion prevented plaintiff working certain scheduled hours which in turn lead to her denial of unemployment compensation; this was a substantial, albeit indirect, burden upon religious behavior); Thomas v. Review Board of Indiana Employment Security Division, 450 U.S. 770, 717-18 (1981) ("where the State .. . denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists . . . While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial”). In contrast to the cases of an indirect substantial burden upon religion such as Thomas, supra or Hobbie, supra, the plaintiffs in this case claim that their secular objection to home visits prevents approval of the home schooling plan which is compelled by their religious beliefs. Thus, the home visit does not implicate or impair the exercise of any religious belief. After all, if the periodic inspection was agreed to, the plaintiffs plainly would be permitted to home school in accordance with their religious beliefs. “Incidental effects of Government programs, which *12 may make it more difficult to practice certain religions, but which have no tendency to coerce individuals into acting contrary to their religious beliefs, [do not] require Government to bring forward a compelling justification for its otherwise lawful actions.” Curtis v. School Committee of Falmouth, 420 Mass. at 762, quoting, Lyng v. Northwest Indian Cemetery Protective Association, 485 U.S. 439, 450-51 (1988). Because the periodic visits do not infringe upon any religious belief, no free exercise claim has been made.[7]
Even if the plaintiffs’ religious expression was substantially burdened by the periodic inspections, such announced, twice yearly periodic inspections are likely to be one of the least restrictive means of achieving the compelling State interest of insuring that home education is actually occurring in accordance with the approved plan. Utilizing pre-Smith First Amendment jurisprudence, the First Circuit Court of Appeals found that such a combination of teacher and curriculum review, plus on-site visits (particularly when such on-site visits have the purpose of a simple “check-up”) constitute a “least restrictive” means to achieve the compelling goal of universal child education. The First Circuit, in this connection, rejected the argument pressed by the plaintiffs that the standardized testing constitutes a less restrictive alternative. New Life Baptist Church Academy v. East Longmeadow, supra at 947-51 (“The free exercise clause must give the State some degree of administrative leeway in achieving compelling interest"). Similar reasoning applies to this case. See also Blackwelder v. Safnauer, 689 F.Supp. 106, 135 (N.D.N.Y. 1988) (upholding nearly identical home visitation requirement as a least restrictive means to achieve compelling state interest in education).
For these reasons, the plaintiffs’ freedom of exercise claim must fail.
D. Illegal Search.
As set forth above, these periodic inspections, at least as limited by the Lynn School District’s practice, are fully authorized by c. 76, §1. However, no provision of Massachusetts law provides for the school district to obtain a warrant to enter the home of a family to insure that the home schooling plan is being implemented. Thus, these inspections are currently contemplated to occur without the school official first obtaining a warrant of any kind.
It is undisputed that the periodic inspections are limited in their duration, scope, and content. As set forth previously, the inspections are held at a maximum of twice a year. They are prearranged a week in advance. The time of the inspection must be convenient to the parent. The inspection lasts no more than forty-five minutes. The purpose of the inspection is purely civil in nature. The focus of the inspection is simply to insure that instruction is actually occurring and that it is occurring in conjunction with the home schooling plan approved by the school district. The periodic inspection would involve a school official simply sitting in the room where the instruction was ongoing. The choice of which room the instruction was occurring is obviously up to the parent.
The plaintiffs vigorously assert that such a home visit constitutes an illegal search, in violation of Article 14 of the Massachusetts Declaration of Rights. This Court disagrees.
The home visits do constitute a “search” for constitutional purposes. The onsite visits are most likely to take place in the plaintiffs’ homes.[8] Obviously, a home is an area where a person has a most reasonable expectation of privacy. See Commonwealth v. Berry, 420 Mass. 95, 105-06 (1995) (detailing factors to be considered to determine if search occurred). But see Wyman v. James, 400 U.S. 309 (1971) (holding that welfare inspection did not constitute a search) (criticized in LaFave, Search and Seizure §10.3(a)). This is true even though the plaintiffs have decided to conduct a school in their own homes. Camara v. Municipal Court, 387 U.S. 523, 530-31 (1967). Even though the plaintiffs’ homes are being used for educational purposes, this does not mean that the plaintiffs have forfeited all reasonable expectations of privacy. If commercial premises are afforded protection under Article 14 of the Massachusetts Constitution, then a school in one’s home plainly is afforded protection. Cf. Horseman’s Benevolent & Protection Ass’n v. State Racing Comm'n, 403 Mass. 692, 702 (1989). Likewise, it makes no difference that this search is not part of any criminal investigation. Camara v. Municipal Court, 387 U.S. at 530.
Article 14 prohibits “all unreasonable searches.” Commonwealth v. Alvarez, 422 Mass. 198, 209 (1996) (“the Federal and State Constitutions do not prohibit all searches — only those searches that are unreasonable”). Most searches done without a warrant are presumptively unreasonable. This is particularly true of most criminal searches in that they generally are so intrusive and subject to such wide discretion by the law enforcement officials that such a search is held presumptively unreasonable absent certain well established exceptions. See Katz v. United States, 389 U.S. 347, 357 (1967). In certain circumstances however, the search may involve such a slight intrusion upon privacy and be so carefully limited in terms of scope and extent that it may be considered reasonable even without a warrant. See LaFave, Search and Seizure §10.1(c). This is precisely what United States Senior District Judge Walter J. Skinner decided in the context of this very case when analyzing the Fourth Amendment claim asserted by the plaintiffs. See Pustell v. Lynn Public Schools, Civil Action No. 91-13113-s (D.Mass., April 12, 1993).
There is no reason to believe that Article 14 of the Massachusetts Declaration of Rights does not encompass the same balancing test adopted by the Supreme Court in determining whether or not a search is *13 reasonable. The United States Supreme Court has established the following framework:
Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context in which the search takes place. The determination of the standard of reasonableness governing any specific class of searches requires “balancing the need to search against the invasion which the search entails.” Camara v. Municipal Court, 387 U.S. 536-37. On one side of the balance is arrayed the individual’s legitimate expectations of privacy and personal security; and on the other, the goverment’s need for effective methods to deal with breaches of public order.
New Jersey v. T.L.O., 469 U.S. 325, 337 (1985). See Commonwealth v. Carey, 407 Mass. 528 (1990) (citing T.L.O. with approval). In this case the Court must balance the plaintiffs’ privacy interests against the school district’s compelling interest in child education and the degree of intrusiveness that the home visits entail.
The plaintiffs plainly have a substantial privacy interest in their homes. This is true even though they are utilizing their home to school their children. At the heart of Article 14 and the Fourth Amendment is the right of an individual or a family “to be left alone” within their home. Homestead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J. dissenting).
Balanced against the plaintiffs’ unquestioned expectation of privacy is the degree of intrusiveness of the contemplated home visits. In this case, the home visits are minimally intrusive. The home visits are pre-announced and scheduled at a time convenient to the parents. The visit is conducted by a school official, and not a law enforcement official. The visit is confined to whatever room the parents choose to instruct within during the visit. The parents have a full week of notification before the visit occurs. See LaFave, Search and Seizure §10.1(g) (noting that Camara warrant requirement does not require advance notice and arguing that “advance notice of the inspector’s visit and if the occupant had some freedom to determine when the inspection would be conducted” gives the greatest protection to occupant in terms of avoiding embarrassment or the display of items or behavior unconnected with the inspection). The purpose of the visit is limited to determining whether or not the home instruction plan is being implemented. The visit only lasts for a maximum of forty-five minutes and only occurs twice ayear. See LaFave, supra§10.1(c) (noting that watered down warrant requirement under Camara decision serves purpose of avoiding arbitrary, bad faith inspections; in this case the limitation of time and number protect against such arbitrary behavior). This intrusion truly is minimal when compared against a typical administrative search which is not pre-announced, not confined to any particular location and may also include the search of numerous documents and encompass criminal charges. Likewise, a typical criminal search is vastly more intrusive than a school official dropping by to sit, for example, in a living room at a pre-announced time for forty-five minutes.
As discussed previously, the state has a compelling interest in insuring that the child is receiving an education and the home visit requirement is a reasonable step to insure that that interest is being satisfied. Such a home visit never has been struck down on constitutional grounds. See e.g., New Life Baptist Church Academy v. East Longmeadow, supra; Blackwelder v. Safnauer, 689 F.Supp. 106 (N.D.N.Y 1988); In Re Kilroy, 467 N.Y.S. 2nd 318 (1983).
The final inquiry in this balancing is whether the “burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search.” Camara v. Municipal Court, 387 U.S. at 532-33. See also Wyman v. James, 400 U.S. 309, 318-20 (1971) (warrantless home visit in Welfare Administration context was reasonable). Cf. Commonwealth v. Carey, 407 Mass. 528 (1990) (adopting standards set forth by Supreme Court in New Jersey v. T.L.O. in school search context). Forcing the school district to obtain a warrant for each home visit would plainly frustrate the purpose of such periodic inspection. As Judge Skinner reasoned:
The traditional Fourth Amendment protections are poorly suited to the home school context because all the operative information relating to the learning environment and student-teacher relationship is hidden from public view. If school officials were required to comply with the warrant procedure, a very significant danger exists that deficiencies in a child’s secular education would go undetected for a substantial period of time. The minimal inconvenience accompanying the school’s limited and infrequent intrusions into the [plaintiffs] home cannot justify this substantial impingement of a legitimate public interest.
Pustell v. Lynn Public Schools, supra at p. 10.
Admittedly, traditional Article 14 and Fourth Amendment analysis does not strictly comport with the fact pattern of this case. For example, the case law concerning searches in schools is largely based upon the need for prompt action (an exigency that does not exist in this case). See Commonwealth v. Snyder. 413 Mass. 521, 526-27 (1992). Likewise, the cases upholding warrantless searches in the administrative context most typically involve “closely regulated” industries. It seems a far stretch to consider home schooling a closely regulated industry, even if the three prong analysis of the administrative search cases does appear to be satisfied given the closely limited time, place, and scope of the warrantless inspection in this case. See Commonwealth v. Tart, 408 Mass. 249, 254-57 (1990).
*14 Given the broad interpretation of what constitutes a “search” under both federal and state case law, the balancing process of determining what constitutes a reasonable search which can be conducted without a warrant is a necessity. Contrast Wyman v. James, 400 U.S. 309 (1971) (holding as an initial matter that a home visit by welfare official does not constitute a “search" for purposes of the Fourth Amendment).[9]
If one were to accept the plaintiffs’ argument that these home visits are illegal searches, then much of every day administrative oversight would be substantially burdened. For example, it is difficult to see how this case is truly any different from an individual who wishes to build an addition to their home. That person would obtain a building permit. A condition of that building permit would allow the building inspector (without a warrant) to come within the house to insure that the addition had been properly constructed. See G.L.c. 143, §3. Again, the building inspector’s visit presumably would be pre-announced and would constitute a minimal intrusion in that it is strictly for a civil purpose, limited to observing a particular area, and limited to determining whether or not the new construction complied with all applicable building codes. In these circumstances, just as in the circumstance of this case, such a warrantless intrusion or “search” is reasonable and does not require a warrant. Indeed, it would be difficult for a building inspector to obtain such a warrant in that the building inspector would have no prior, particularized knowledge as to whether the building work had been done in accordance with the building code or not.
Another way to analyze this issue is to determine what, if any, purpose would be served by requiring an inspectional warrant under the Camara rationale. As the Camara court suggested, probable cause in this type of inspectional warrant could be satisfied merely by the “passage of time.” Camara, supra at 538. Thus, all the school principal would need to do is affirm under oath that the parents were schooling their children at home, the location of the home, and the fact that approximately five months had passed since the last inspection. In these circumstances, the presence of a neutral magistrate passing on such a warrant application serves no purpose. Likewise, such a warrant process may well be more intrusive to the homeowner since advance notice is not a requirement of Camara-type inspectional warrant. Thus, this iype of inspection is sufficiently limited and restricted in terms of time, number, location and purpose to be considered a reasonable search for constitutional purposes.[10]
Thus, on balance, the limited, pre-announced periodic inspections of the plaintiffs homes are reasonable searches which do not require a warrant under the Massachusetts Constitution.
CONCLUSION
The right to home school one’s children is not only protected by the federal and state constitutions, it also may represent the most effective, exciting, and fulfilling educational choice for certain families. No state action is allowed to unduly hamper this child rearing decision. The Lynn School Committee’s limited, announced, twice-yearly home visits are a reasonable regulation to further the compelling interest of education and such visits constitute a minimal intrusion into the home. These visits do not infringe the plaintiffs’ freedom of religion and they do not constitute illegal searches. Thus, summary judgment is entered on behalf of the defendant.

In fact, Mrs. Brunelle and Mrs. Pustell are certified to teach elementary education and Mr. Pustell is certified to teach mathematics at a secondary education level.

here is little doubt that the plaintiffs have standing to raise these issues and that the case is ripe for resolution. The plaintiffs are currently educating their children at home and defying the School Department’s home visit requirement. In 1994, the School District initiated a criminal complaint against the Brunelles for violations of G.L.c., §2 and §4. The parties agreed to drop this criminal action from the juvenile docket pending resolution of the issues presented in this case.

The plaintiffs initially instituted an action in the federal district court. This was appealed to the Court of Appeals for the First Circuit. The First Circuit abstained under the Pullman doctrine. Although the plaintiffs assert that they are reserving all federal constitutional issues for the pending federal action, this may not be practical. As discussed, infra, many of the state constitutional provisions involved in this case have been construed in accordance with similar federal constitutional provisions. See, e.g.. Care & Protection of Charles, 399 Mass. 324 (1987) (analyzing home schooling in context of 14th Amendment of the Federal Constitution); Curtis v. School Committee of Falmouth, 420 Mass. 749, 761 n.11 (1995), cert. denied, 116 S.Ct. 753 (1996) (noting that issue of religious freedom under both State and Federal Constitutions apply same test as to whether state action creates a substantial burden on a claimant’s free exercise of religion). Cf. Michigan v. Long, 463 U.S. 1032 (1983). Certainly, the Massachusetts Declaration of Rights does not, and cannot, provide less protection for freedom of religion or illegal searches than does the federal constitution. Thus, this Court, being a court of general jurisdiction, must necessarily address certain federal constitutional matters. Nevertheless, the plaintiffs are entitled to their choice of a federal forum and the federal district judge obviously is not in any way bound by this Court’s interpretation of any federal constitutional issue.

The Court instructed the parties to notify the Attorney General’s Office of this action and invited that office to submit a amicus curiae brief. No response has been received from the Attorney General’s Office nor has anyone from that office displayed an interest in this declaratory judgment action that attacks the constitutionality of a municipal school board’s practices. Cf. G.L.c. 231A §8. One dedicated and experienced home schooler, a Ms. Nancy Hardenbergh, did submit a helpful amicus curiae memorandum.

In moving for summary judgment, the plaintiffs submitted the entire deposition of Dr. Perullo and rely heavily on portions thereof. For the purpose of this motion, the plaintiffs concede that there are no disputed issues of fact presented by Perullo’s testimony. The Court inquired by letter whether there existed any factual dispute regarding the Lynn School Committee’s home visitation process. Neither party bothered *15 to reply. In these circumstances, the Court is entitled to accept the record presented by the parties and their stipulation that no disputed issue of fact exists.

For example, the principal might be asked to check off such standardized questions as to whether: The student and home teacher were present, the proposed materials were being utilized, and whether there was interaction between teacher and student. Still, none of these observations determine whether the home schooling plan is actually being implemented and that some sort of instruction is actually ongoing. Those ultimate questions are largely subjective.
In a similar context, then Superior Court Justice Greaney stated:
In evaluating the plan submitted by the parents the School Committee does not have to promulgate formal standards. It may do so if it wishes, but there is no constitutional or statutory requirement that it do so. While the existence of standards is undoubtedly helpful to an understanding of how the issues are disposed of, and in minimizing the risk of arbitrary conduct, it would intrude on the lawful authority of the committee to require creation of such standards, and perhaps, unduly formalize an area where the committee should have considerable discretion.
Perchemlides v. Frizzle, Hampshire County Superior Ct., Civil No. 16641 (Nov. 13, 1978).

Note that this case is not a case where the government’s denial of a benefit indirectly burdens a religious belief. In those “indirect burden” cases the government’s disapproval or prohibition of some religious practice occurs and this disapproval, therefore, denies a benefit to the party that wishes to participate in the practice. For example, in Hobbie v. Unemployment Appeals Commission of Florida, 480 U.S. 136 (1987), the petitioner declined to work on her Sabbath (Friday evening and Saturday) and as a result was discharged. The State unemployment system considered this to constitute “misconduct” and therefore denied her unemployment benefit as she had not been discharged through no fault of her own. Although the State had not directly required that she work on her Sabbath day, the State did indirectly burden that religious conduct by denying benefits when she observed her religious conduct. That is not the case here where the plaintiffs’ objection to the government’s action is not based upon religious belief. The government action here, of course, is the periodic home inspection. If a party could boot-strap such a claim into a free exercise claim, there would be no limit to such claims and societal regulation would be nearly impossible. For example, someone may have a sincere religious belief that they must attend distant church services every Sunday, but also hold a personal belief that the State should not require car operators to obtain a drivers license (or purchase mandatory insurance or register a vehicle). The objection to such Government licensing may result in the party not being able to drive a car, and, in turn, may effectively prohibit the party from getting to church. Still, the State’s licensing requirement cannot be considered to have infringed any exercise of a religious belief or practice.

Even though “home schooling” often occurs within a home, this is not necessarily so. Home schoolers often expand the learning experience well beyond the home, including field trips, library sessions, and educational activities at assorted locations. In addition, some home schoolers may band together at a certain non-home location to engage in certain educational activities. School officials might be invited to observe these non-home based sessions if they are typical of the instruction being provided.

It appears doubtful that the Supreme Judicial Court would adopt this particularly controversial holding of Wyman. But note that the United States Supreme Court also provided an alternative holding that such a search was reasonable and, thus, did not require a warrant.

Even if this Court is in error on the warrant issue, the plaintiffs still cannot succeed on their claim in that the School Department could insist on home visits but would be required to obtain an inspectional warrant if the parent refused permission to enter.